## RALPH PASCARELLI *v.* MOLITERNO STONE SALES, INC., ET AL.
### (15266)

Dupont, C. J., and Landau and Hennessy, Js.

Argued December 12, 1996—*officially released March 4, 1997*

*Anselmo M. Delia,* with whom were *Paul J. Dorsi* and, on the brief, *William Rocco,* for the appellant (plaintiff).

*James D. Moran, Jr.,* for the appellee (defendant).

HENNESSY, J. The plaintiff, Ralph Pascarelli, appeals from the decision of the compensation review board of the workers' compensation commission (review board). The review board affirmed the finding of the workers' compensation commissioner for the fourth district and his dismissal of the plaintiff's request for modification of the parties' voluntary agreement. The plaintiff sought to modify the compensation rate set in the voluntary agreement by including in his base wage rate the total employer contributions to his pension, health and welfare fund, and to his annuity. On appeal,

the plaintiff claims that the review board improperly (1) affirmed the commissioner's decision denying the plaintiff's request for modification and (2) accepted the commissioner's reliance on the distinction between the definition of "wages" in General Statutes (Rev. to 1989) § 31-310[1] and the definition of "income" in General Statutes (Rev. to 1989) § 31-275 (14).[2]

The commissioner found the following relevant facts. The plaintiff suffered a compensable injury on May 2, 1989. By voluntary agreement, Pascarelli and the defendant Moliterno Stone Sales, Inc.,[3] agreed to a compensation wage rate of $613.87 per week, approved by the commissioner on April 7, 1991. Subsequently, the parties entered into another voluntary agreement that set the compensation rate at $655.79 per week. The commissioner also noted that the defendant had filed for Chapter 11 bankruptcy and had been placed under receivership by the Rhode Island Superior Court.

Furthermore, the commissioner concluded that there was a distinction between the definition of "income" in General Statutes (Rev. to 1989) § 31-275 (14) and the use of the word "wages" in General Statutes § 31-310

[1] General Statutes (Rev. to 1989) § 31-310 provides in pertinent part: "For the purposes of this chapter, the average weekly wage shall be ascertained by dividing the total wages received by the injured worker from the employer in whose service he is injured during the twenty-six calendar weeks immediately preceding that during which he was injured, by the number of calendar weeks during which, or any portion of which, such worker was actually employed by such employer, but, in making such computation, absence for seven consecutive calendar days, although not in the same calendar week, shall be considered as absence for a calendar week . . . ."

[2] General Statutes (Rev. to 1989) § 31-275 (14) provides: " 'Income' means all forms of remuneration to an individual from his employment, including wages, accident and health insurance coverage, life insurance coverage and employee welfare plan contributions."

[3] The Second Injury and Compensation Assurance Fund is a named party to this appeal but did not file a brief or appear at oral argument. We refer in this opinion to Moliterno as the defendant.

and that wages are exclusive of the fringe benefits claimed by the plaintiff. He also found that the plaintiff could not proceed on the modification without obtaining relief from the automatic stay created by the defendants's bankruptcy proceeding. On the basis of these findings, the commissioner denied the plaintiff's request for modification.

The plaintiff appealed to the review board from the commissioner's decision. The review board affirmed the commissioner's findings and dismissal. The plaintiff now appeals the review board's decision.

Subsequent to the review board's decision, the plaintiff learned and the defendant conceded that there was no federal bankruptcy stay in effect. The plaintiff claims that because the commissioner relied on this mistake of fact, the review board's affirmation of the commissioner's decision should be reversed. The defendant, however, argues that this issue is moot because the commissioner also found in favor of the defendant on the merits of the case. We find that the review board properly affirmed the commissioner's finding on the merits of the case and conclude that the issue of the commissioner's allegedly improper reliance on a bankruptcy stay is moot.

The dispositive issue in this case, therefore, is whether the review board improperly relied on the commissioner's distinction between "income" as defined in § 31-275 (14) and "wages" as used in § 31-310 to conclude that the compensation wage rate did not include the fringe benefits remuneration asserted by the plaintiff. We conclude that the review board correctly affirmed the commissioner's decision on this issue.

At the time of the plaintiff's injury, income was defined in § 31-275 (14) to include "wages, accident and health insurance coverage, life insurance coverage and employee welfare plan contributions." Section 31-310,

however, provided that in order to calculate the claimant's average weekly wage and base compensation rate, wages received by an employee during the twenty-six weeks prior to the date of injury are to be used. "It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. . . . It is well settled that a statute must be applied as its words direct." (Citations omitted; internal quotation marks omitted.) *All Brand Importers, Inc.* v. *Dept. of Liquor Control*, 213 Conn. 184, 194, 567 A.2d 1156 (1989). From the use of the term wages instead of income in § 31-310, it is clear that the legislature intended that fringe benefits remuneration, such as health coverage and employee welfare plan contributions, were not to be included in calculating the plaintiff's base compensation rate.[4]

The plaintiff claims that in the alternative, he should be entitled to open the voluntary agreement because it was premised on General Statutes (Rev. to 1989) § 31-284b,[5] a statute that was subsequently preempted by

---

[4] The plaintiff argues that the commissioner should have applied the test as articulated in *Thibeault* v. *General Outdoor Advertising Co.*, 114 Conn. 410, 158 A. 912 (1932), to determine which benefits should be included in wages. In *Thibeault*, the Supreme Court held that the "test to be applied is, does the allowance represent a real and reasonably definite economic gain to the employee, reasonably within, or at least not contrary to, the fair intent of the parties . . . ." Id., 414. We need not apply the test provided in *Thibeault*, however, because it is clear from the statutory language that "wages" for purposes of § 31-310 do not include the fringe benefits asserted by the plaintiff. See *New Haven* v. *United Illuminating Co.*, 168 Conn. 478, 485, 362 A.2d 785 (1975) (if statutory language clear and unambiguous, there is no room for construction).

[5] General Statutes (Rev. to 1989) § 31-284b (a) provides: "In order to maintain, as nearly as possible, the income of employees who suffer employment-related injuries, any employer, as defined in section 31-275, who provides accident and health insurance or life insurance coverage for any employee or makes payments or contributions at the regular hourly or weekly rate for full-time employees to an employee welfare fund, as defined in section 31-53, shall provide to such employee equivalent insurance coverage or welfare fund payments or contributions while the employee is eligible

§ 514 (a) of the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144 (a). See *District of Columbia* v. *Greater Washington Board of Trade*, 506 U.S. 125, 113 S. Ct. 580, 121 L. Ed. 2d 513 (1992). The plaintiff claims that the preemption constituted a mutual mistake of material fact on which the parties relied in entering the voluntary agreement. He further claims that on the basis of the "date of injury rule,"[6] he is entitled to receive benefits governed by the statutes in force at the time of his injury even if the statute is subsequently preempted by federal law. The plaintiff, however, failed to assert these claims at the hearing before the commissioner or the review board and makes no argument that these claims are of constitutional magnitude. Because we have consistently held that we are not bound to review on appeal unpreserved, non-constitutional claims, we decline to review the plaintiff's claim. See *State* v. *Kulmac*, 230 Conn. 43, 74, 644 A.2d 887 (1994); *State* v. *Hammond*, 221 Conn. 264, 289, 604 A.2d 793 (1992).[7]

---

to receive or is receiving workers' compensation payments pursuant to this chapter, or while the employee is receiving wages under a provision for sick leave payments for time lost due to an employment-related injury."

General Statutes § 31-53 (h) defines employee welfare fund as "any trust fund established by one or more employers and one or more labor organizations to provide from moneys in the fund, whether through the purchase of insurance or annuity contracts or otherwise, benefits under an employee welfare plan . . . ."

[6] The Supreme Court applied the "date of injury rule" in *Iacomacci* v. *Trumbull*, 209 Conn. 219, 550 A.2d 640 (1988). Under this common-law rule, "new workers' compensation legislation affecting rights and obligations as between the parties and not specifying otherwise [applies] only to those persons who received injuries after the legislation became effective, and not to those injured previously." Id., 222.

[7] Even if we were to review the plaintiff's unpreserved claims, we would conclude that these claims have no merit. The plaintiff's claim that the voluntary agreement was premised on a mutual mistake of fact fails because the preemption occurred *after* the parties had entered into the agreement. His "date of injury rule" claim also fails because this rule applies only when there has been subsequent legislation, not when legislation has been preempted by federal law.

The decision of the compensation review board is affirmed.

In this opinion the other judges concurred.