DANIEL LUCE v. UNITED TECHNOLOGIES
CORPORATION/PRATT AND WHITNEY
AIRCRAFT DIVISION ET AL.
(SC 15839)

Callahan, C. J., and Berdon, Norcott, Katz, Palmer, McDonald and Peters, Js.

Argued April 28—officially released September 22, 1998

*Francis X. Drapeau*, with whom, on the brief, was *Mark D. Leighton*, for the appellant (plaintiff).

*Michael J. McAuliffe*, for the appellees (defendants).

*Opinion*

PALMER, J. In this certified appeal, we must decide whether the Appellate Court properly affirmed the decision of the compensation review board (board) excluding certain benefits from the calculation of the plaintiff's average weekly wage under General Statutes (Rev. to

1991) § 31-310[1] for purposes of establishing his workers' compensation payments. We conclude that it did and thus affirm the judgment of the Appellate Court.

The relevant facts and procedural history are not disputed. The workers' compensation commissioner for the first district (commissioner) found that the plaintiff, Daniel Luce, suffered a compensable back injury on September 6, 1991, while working for the named defendant, United Technologies Corporation/Pratt and Whitney Aircraft Division.[2] The commissioner also found that, as a result of the injury, the plaintiff had suffered a 20 percent permanent partial disability of his back. The plaintiff requested that the commissioner, in determining the plaintiff's average weekly wage under § 31-310, include the value of certain benefits, namely, medical insurance, dental insurance, life insurance, accidental death and dismemberment insurance, disability insurance, pension contributions, and vacation and sick pay.[3] The commissioner denied the plaintiff's request and awarded compensation based solely on his weekly salary.

---

[1] General Statutes (Rev. to 1991) § 31-310 provides in relevant part: "For the purposes of this chapter, the average weekly wage shall be ascertained by dividing the total wages received by the injured worker from the employer in whose service he is injured during the twenty-six calendar weeks immediately preceding that during which he was injured, by the number of calendar weeks during which, or any portion of which, such worker was actually employed by the employer, but, in making such computation, absence for seven consecutive calendar days, although not in the same calendar week, shall be considered as absence for a calendar week. . . ."

Although § 31-310 has since been amended, the amendments are not relevant to this appeal. Hereafter, unless otherwise indicated, all references to § 31-310 are to the 1991 revision of that statute, which was in effect at the time of the plaintiff's injury.

[2] Cigna Property and Casualty also is a defendant in this case. For purposes of this opinion, however, hereafter references to the defendant are to United Technologies Corporation/Pratt and Whitney Aircraft Division.

[3] Hereafter, these benefits, including insurance benefits, will be referred to collectively as fringe benefits. References hereafter to the plaintiff's insurance benefits include his medical insurance, dental insurance, life insurance, accidental death and dismemberment insurance, and disability insurance.

The plaintiff thereafter filed a motion for articulation seeking a finding by the commissioner confirming the value of each of the fringe benefits that the plaintiff had maintained should be included in the determination of his average weekly wage under § 31-310.[4] The plaintiff also filed a motion to correct the commissioner's decision, claiming that the award should have included the value of the fringe benefits.[5] The commissioner denied both motions.

The plaintiff appealed the commissioner's decision to the board on the ground that the commissioner improperly had failed to include the value of the fringe benefits in the calculation of the plaintiff's average weekly wage.[6] The board affirmed the decision of the commissioner. *Luce* v. *United Technologies Corp.*, 3080 CRB 1-95-6 (December 16, 1996). In rejecting the plaintiff's argument that the value of his insurance benefits and pension plan contributions should be included in his wage determination under § 31-310, the board relied on its decision in *Pascarelli* v. *Moliterno Stone Sales, Inc.*, 14 Conn. Workers' Comp. Rev. Op. 328, 332 (1995), aff'd, 44 Conn. App. 397, 689 A.2d 1132, cert. denied, 240 Conn. 926, 692 A.2d 1282 (1997), in which the board

[4] At the hearing before the commissioner, the plaintiff introduced into evidence the deposition testimony of Jeffrey Hughes, an employee of the defendant's human resources department, regarding the nature and value of the plaintiff's fringe benefits.

[5] In his motion to correct, the plaintiff alleged that he had established that the total weekly value of the fringe benefits was $170.12. Specifically, he claimed that the amount that should have been included in his average weekly wage for each fringe benefit was as follows: medical insurance, $62.77; dental insurance, $5.97; life insurance, $5.33; accidental death and dismemberment insurance, $.37; disability insurance, $25.73; pension benefits, $29.98; vacation pay, $29.98; and sick pay, $9.99.

[6] The plaintiff also asserted that the commissioner improperly had failed to determine: (1) the period in which the plaintiff was totally disabled; and (2) the duration and amount of temporary partial benefits to which the plaintiff was entitled. Because the plaintiff did not brief these claims, however, the board considered them to have been abandoned and did not address them.

had determined that because the term "wage" is not as broad as the term "income," the compensation wage rate does not include fringe benefits. Thereafter, the Appellate Court subsequently agreed with the board and held that because the definition of the term "income" for purposes of the Workers' Compensation Act (act); General Statutes § 31-275 et seq.; expressly included all forms of remuneration, including wages, accident and health insurance coverage, life insurance coverage and employee welfare plan contributions, the legislature, in using the term "wages" in General Statutes (Rev. to 1989) § 31-310 instead of the broader, more encompassing term "income," must have intended that insurance benefits and pension plan payments not be included in the calculation of an employee's wages under § 31-310.[7] *Pascarelli* v. *Moliterno Stone Sales, Inc.*, supra, 44 Conn. App. 400. The board in the present case also reasoned that any requirement that the value of insurance benefits be included in the calculation of the plaintiff's average weekly wage would be inconsistent with the United States Supreme Court's decision in *District of Columbia* v. *Greater Washington Board of Trade*, 506 U.S. 125, 127, 113 S. Ct. 580, 121 L. Ed. 2d 513 (1992) (federal Employee Retirement Income Security Act [ERISA] preempts states from requiring private employers to provide health insurance benefits for injured employees eligible for workers' compensation benefits).[8] See *Luis* v. *Frito-Lay, Inc.*, Supreme

[7] At the time of the employee's injuries in *Pascarelli*, General Statutes (Rev. to 1989) § 31-275 (14) defined "income," for purposes of the act, as "all forms of remuneration to an individual from his employment, including wages, accident and health insurance coverage, life insurance coverage and employee welfare plan contributions. . . ." The definition of the term "income" now is contained in General Statutes § 31-284b (a); see footnote 12 of this opinion; and is in all material respects identical to the definition previously set forth in § 31-275 (14).

[8] As the board stated, "we would undeniably be disregarding the spirit of the [United States] Supreme Court decision in *Greater Washington Board of Trade* if we were to allow a claimant to collect the value of insurance

Court, Docket No. SC 14536 (order, April 27, 1993) (in light of holding of *District of Columbia* v. *Greater Washington Board of Trade*, supra, 125, requirement of General Statutes § 31-284b [a] that "any employer who provides accident and health insurance or life insurance coverage for any employee or makes payments . . . for full-time employees to an employee welfare plan, shall provide to the employee equivalent insurance coverage or . . . contributions while the employee is . . . receiving compensation pursuant to this chapter" is unenforceable against private employers); *Civardi* v. *Norwich*, 231 Conn. 287, 298–99 n.14, 649 A.2d 523 (1994) (same).[9]

As for vacation and sick pay, the board adopted the approach that it previously had employed in *Graziano* v. *St. Mary's Hospital*, 11 Conn. Workers' Comp. Rev. Op. 10 (1993). In *Graziano*, the board held that vacation and sick pay *could* be included in an employee's average weekly wage calculation under § 31-310 if they were proven to be "payments dependent on hours worked or payments by way of compensation for hours worked or sums paid due to contractual or quasi-contractual obligations." Id., 13.[10] The board in the present case concluded, however, that because the commissioner had made no findings regarding the existence of any

premiums as compensation, even though direct payment of those premiums by a private employer cannot be mandated by state law."

[9] Because pension benefits were not at issue in *District of Columbia* v. *Greater Washington Board of Trade*, supra, 506 U.S. 125, the board did not rely on that case in support of its resolution of the plaintiff's pension benefits claim.

[10] The board in *Graziano* gave the following example of when vacation pay could be considered part of an employee's wages: "If, for example, the employment contract provides that every employee who worked 1500 hours in 1991 shall receive 80 hours of vacation pay in 1992, that vacation pay . . . thus becomes extra remuneration allocable to the period over which the employee had to work in order to earn it." (Citations omitted; internal quotation marks omitted.) *Graziano* v. *St. Mary's Hospital*, supra, 11 Conn. Workers' Comp. Rev. Op. 13.

one of these three prerequisites, the plaintiff was not entitled to the inclusion of either vacation or sick pay in the calculation of his average weekly wage under § 31-310.[11]

The plaintiff here appealed from the decision of the board to the Appellate Court, which affirmed the board's decision in a per curiam opinion, stating that "[t]his case is controlled by *Pascarelli* v. *Moliterno Stone Sales, Inc.*, [supra, 44 Conn. App. 397]." *Luce* v. *United Technologies Corp.*, 47 Conn. App. 909, 701 A.2d 351 (1997).

We granted the plaintiff's petition for certification limited to the following question: "Whether, under the circumstances of this case, the Appellate Court properly excluded from the calculation of the workers' compensation weekly benefit rate the value of the following forms of remuneration: medical, dental, life, accident/ death and dismemberment and disability insurances; pension benefits; vacation and sick pay?" *Luce* v. *United Technologies Corp.*, 243 Conn. 958, 704 A.2d 804 (1997). The plaintiff contends that he is entitled to the inclusion of these fringe benefits in the calculation of his average weekly wage because the term "wages" as used in § 31-310 includes such benefits. He also claims that the failure to do so violates his rights under the equal protection clauses of the federal and state constitutions. We disagree and affirm the judgment of the Appellate Court.

I

We first consider whether, as a matter of statutory construction, the term "wages" in § 31-310 includes

---

[11] The board noted that the plaintiff, in his motion to correct, had alleged that the calculation of his average weekly wage should have included compensation for " 'three weeks of vacation per year at forty hours per week at the rate of $12.99 per hour,' and . . . 'five days (or forty hours) of sick pay per year at $12.99 per hour,' " which, when calculated over a fifty-two week period, totals $29.98 and $9.99 per week, respectively. The board further stated, however, that, "[a]ssuming that those amounts were [prop-

fringe benefits. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Carriero* v. *Naugatuck*, 243 Conn. 747, 753, 707 A.2d 706 (1998). "It is the duty of the court to interpret statutes as they are written; *Muha* v. *United Oil Co.*, 180 Conn. 720, 730, 433 A.2d 1009 (1980); and not by construction read into statutes provisions which are not clearly stated. *Glastonbury Co.* v. *Gillies*, 209 Conn. 175, 179, 550 A.2d 8 (1988)." (Internal quotation marks omitted.) *State* v. *Johnson*, 227 Conn. 534, 542, 630 A.2d 1059 (1993).

## A

We address first the question of whether the legislature intended to include insurance and pension benefits in the calculation of an employee's wages for purposes of § 31-310. The term "wages" is not defined in § 31-310 or anywhere else in the act. The term "income" is defined, however, under § 31-284b (a)[12] to include *all*

erly] calculated . . . by the [plaintiff], it is not clear from the requested corrections that they depended on the hours worked by the [plaintiff] or his productivity."

[12] General Statutes § 31-284b provides in relevant part: "Employer to continue insurance coverage or welfare plan payments for employees eligible to receive workers' compensation. Use of Second Injury Fund. (a) In order to maintain, as nearly as possible, the income of employees who suffer employment-related injuries, any employer who provides accident and health insurance or life insurance coverage for any employee or makes payments or contributions at the regular hourly or weekly rate for full-time

forms of remuneration to an individual from his employment, *including wages* and other benefits.

In *Pascarelli* v. *Moliterno Stone Sales, Inc.*, supra, 44 Conn. App. 397, the Appellate Court considered whether the employer's contributions to the employee's pension, health and welfare fund, and his annuity, properly should be included in the calculation of his average weekly wage under General Statutes (Rev. to 1989) § 31-310. The court concluded that "[a]t the time of the [employee's] injury [in 1989], income was defined in § 31-275 (14)[13] to include wages, accident and health insurance coverage, life insurance coverage and employee welfare plan contributions. Section 31-310, however, provided that in order to calculate the claimant's average weekly wage and base compensation rate, wages received by an employee during the twenty-six weeks prior to the date of injury are to be used. . . . From the use of the term wages instead of income in § 31-310, it is clear that the legislature intended that fringe benefits remuneration, such as health coverage and employee welfare plan contributions, were not to be included in calculating the [employee's] base compensation rate." (Citation omitted; internal quotation marks omitted.) *Pascarelli* v. *Moliterno Stone Sales, Inc.*, supra, 399–400. Accordingly, the Appellate Court affirmed the decision of the board that the employee's base wage should not be expanded to include the

employees to an employee welfare plan, shall provide to the employee equivalent insurance coverage or welfare plan payments or contributions while the employee is eligible to receive or is receiving compensation pursuant to this chapter, or while the employee is receiving wages under a provision for sick leave payments for time lost due to an employment-related injury. *As used in this section, 'income' means all forms of remuneration to an individual from his employment, including wages, accident and health insurance coverage, life insurance coverage and employee welfare plan contributions and 'employee welfare plan' means any plan established or maintained for employees or their families or dependents, or for both, for medical, surgical or hospital care benefits. . . .*" (Emphasis added.)

[13] See footnote 7 of this opinion.

employer's pension, health and welfare fund, and annuity contributions.

The plaintiff does not seriously dispute either the logic or the holding of the Appellate Court in *Pascarelli* v. *Moliterno Stone Sales, Inc.*, supra, 44 Conn. App. 397. He maintains, instead, that *Pascarelli* is inapposite to the present case because the definition of the term "income" that was dispositive of the issue in that case is not applicable here in view of the fact that, in 1991, the legislature amended § 31-275 by removing the definition of "income" from that statutory section and placing it in § 31-284b.[14] The plaintiff argues that, because the definitional provision of § 31-284b (a) includes the prefatory language "[a]s used in this section"; see footnote 12 of this opinion; the definition of income contained therein is applicable only to *that* statutory section, and not to the act generally or to § 31-310 specifically. Consequently, the plaintiff asserts, the definition of "income" under § 31-284b (a) is not determinative of the meaning of "wages" for purposes of § 31-310.[15] We disagree.

This argument might be persuasive were it not for the fact that an examination of the legislative history

[14] See Public Acts 1991, No. 91-32, §§ 1, 8. Because this amendment took effect on July 1, 1991, prior to the date of the plaintiff's injury, there is no dispute regarding its applicability to the present case.

[15] The plaintiff argues, instead, that we should apply the test established in *Thibeault* v. *General Outdoor Advertising Co.*, 114 Conn. 410, 158 A. 912 (1932), to determine what benefits should be included in his wage calculation under § 31-310. In *Thibeault*, this court held that the "test to be applied is, does the allowance represent a real and reasonably definite economic gain to the employee, reasonably within, or least not contrary to, the fair intent of the parties . . . ." Id., 414. The Appellate Court in *Pascarelli* v. *Moliterno Stone Sales, Inc.*, supra, 44 Conn. 401 n.4, rejected an identical claim "because it is clear from the statutory language that 'wages' for purposes of § 31-310 do not include the fringe benefits asserted by the [employee]." For the reasons that follow in the text of this opinion, we agree with the Appellate Court that *Thibeault* is inapposite in light of the plain language of the act.

of Public Acts 1991, No. 91-32, leads convincingly to a contrary conclusion. "This court has previously examined the legislative history of No. 91-32 of the 1991 Public Acts and determined that it was intended to be a technical amendment." (Internal quotation marks omitted.) *Vaillancourt* v. *New Britain Machine/Litton,* 224 Conn. 382, 393–94, 618 A.2d 1340 (1993). "In commenting on the bill on the floor of the Senate, Senator James H. Maloney, senate chairman of the joint standing committee on labor and public employees, described the bill as 'the bill that makes technical recodification of the Workers' Compensation statute' and that 'cleans up the statute in regard to Workers' Compensation.' 34 S. Proc., Pt. 3, 1991 Sess., p. 836. Similarly, in presiding over a hearing of the joint standing committee, Maloney described the bill as 'a technical revision in [e]ffect to the existing statute.' Conn. Joint Standing Committee Hearings, Labor and Public Employees, 1991 Sess., p. 16. He went on to state: 'So we're not really dealing with changes in the substantive legislation today. If there are substantive changes that are made because of the draft, we do want to hear about that because that's not what's supposed to have occurred with this instrument.' Id. Commissioner John Arcudi of the compensation review division, who participated in formulating the proposed revisions, also testified at the hearing that 'the purpose of the bill [was] not to change substance, but to try to simplify language and eliminate archaic language, reduce language if possible . . . .' Id., p. 17. Finally, in commenting on the bill on the House floor, Representative Joseph A. Adamo, house chairman of the joint standing committee on labor and public employees, stated that the bill 'brings into focus a new section of describing all the definitions that were utilized and sprinkled throughout the entire chapter.' 34 H.R. Proc., Pt. 5, 1991 Sess., pp. 1959–60." *Weinberg* v. *ARA Vending Co.,* 223 Conn. 336, 346–47, 612 A.2d

1203 (1992). Consistent with these observations regarding the purely technical nature of Public Act 91-32, there is nothing in the legislative history of that public act to indicate that the legislature, in moving the definition of "income" from one statutory section to another without any material modification, intended any change in its import or effect.[16]

Moreover, "[i]n construing the act . . . this court makes every part operative and harmonious with every other part insofar as is possible. . . . In addition, the statute must be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . *Williams* v. *Best Cleaners, Inc.*, 237 Conn. 490, 499, 677 A.2d 1356 (1996)." (Citations omitted; internal quotation marks omitted.) *Innocent* v. *St. Joseph's Medical Center*, 243 Conn. 513, 518, 705 A.2d 200 (1998). Therefore, the meaning of a term, "where practical, should be applied consistently throughout the act." Id. The legislature, in defining the term "income" under § 31-284b, evinced an intent to distinguish between wages and income. We see no cogent reason why that distinction is not equally applicable for purposes of § 31-310.

In addition, although the interpretation of statutes is ultimately a question of law subject to our plenary

[16] The plaintiff cites the humanitarian and remedial purposes of the act in support of his claim that, for purposes of § 31-310, "wages" should be construed to include fringe benefits. Although we agree with the plaintiff that the act must be construed liberally to effectuate its beneficent purpose; see, e.g., *Herman* v. *Sherwood Industries, Inc.*, 244 Conn. 502, 511, 710 A.2d 1138 (1998); *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 483, 650 A.2d 1240 (1994); we are not free to accomplish a result that is contrary to the intent of the legislature as expressed in the act's plain language. See *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 441, 623 A.2d 1007 (1993) ("[c]ourts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them" [internal quotation marks omitted]); see also *Doe* v. *Stamford*, 241 Conn. 692, 697, 699 A.2d 52 (1997) ("[a]lthough the parties have called our attention to the public policy implica-

review, we are obliged to give consideration to the board's construction of § 31-310, especially in view of the fact that the issue before us previously has been subject to scrutiny by the Appellate Court in *Pascarelli* v. *Moliterno Stone Sales, Inc.*, supra, 44 Conn. App. 397. See *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995) (board's construction of statute not entitled to special deference unless its determination of question of law previously has been subject of judicial review). The board, which obviously has special expertise in workers' compensation matters, consistently has rejected claims that insurance and pension benefits are included in the calculation of an employee's average weekly wage under § 31-310. See, e.g., *Rodriguez* v. *Devcon Enterprises, Inc.*, 15 Conn. Workers' Comp. Rev. Op. 362 (1996) (medical insurance not included in determining average weekly wage); *Pascarelli* v. *Moliterno Stone Sales, Inc.*, supra, 14 Conn. Workers' Comp. Rev. Op. 328 (employer contributions to employee's pension, health and welfare fund, and annuity not included in calculation of average weekly wage).[17]

tions of this case, the issue presented is, at bottom, a matter of statutory construction").

[17] We note, additionally, that the act requires that the chairperson of the workers' compensation commission publish, on an annual basis, tables of the average weekly wage. See General Statutes § 31-310 (b). If we were to accept the plaintiff's argument that fringe benefits are included in the average weekly wage, the chairperson of the commission would be required to evaluate the benefit provisions for all employees in the state. It is highly unlikely that the legislature intended to place an administrative burden of this nature on the commission chairperson. Moreover, if the legislature had intended to do so, it surely would have done so more explicitly. See *Morrison-Knudsen Construction Co.* v. *Director, Office of Workers' Compensation Programs*, 461 U.S. 624, 634, 103 S. Ct. 2045, 76 L. Ed. 2d 194 (1983) ("[w]ithout clear indication from Congress that this approach [requiring the Secretary of Labor to determine the national average weekly wage by considering the benefit provisions of collective agreements throughout the nation] with its attendant problems is required, we decline to adopt it"). Furthermore, expanding the definition of wages to include these benefits would increase the amount of time required to determine a claimant's average weekly wage, thereby "undermin[ing] the goal of prompt compensation

Furthermore, we agree with the board that to allow insurance benefits to be included in the calculation of wages would run afoul of the holding of *District of Columbia* v. *Greater Washington Board of Trade*, supra, 506 U.S. 129–30, that "ERISA preempts any state law that refers to or has a connection with covered benefit plans (and that does not fall within [an] exception) even if the law is not specifically designed to affect such plans, or the effect is only indirect . . . and even if the law is consistent with ERISA's substantive requirements . . . ." (Citations omitted; internal quotation marks omitted.) As the board recently has stated, "we would be disregarding the spirit of . . . the decision of the United States Supreme Court in *District of Columbia* v. *Greater Washington Board of Trade*, [supra, 125], if we were to hold that the claimant should be provided with compensation equivalent to the value of the insurance coverage that § 31-284b provides. This would allow the claimant to circumvent the fact that § 31-284b can not constitutionally be applied to him by effectively requiring the employer to pay the premium directly to the claimant instead, whereupon he could pass it on to the health insurer to maintain his coverage. [We] cannot sanction that result." *Rodriguez* v. *Devcon Enterprises, Inc.*, supra, 15 Workers' Comp. Rev. Op. 365.

Our conclusion, moreover, is reinforced by relevant scholarly commentary. For example, Professor Arthur Larson, in his treatise on workers' compensation law, states: "Workers' compensation has been in force in the United States for over seventy years, and fringe benefits have been a common feature of American

to injured workers and their survivors." Id., 636–37; see also *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 446, 705 A.2d 1012 (1997) (act "compromise[s] an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation" [internal quotation marks omitted]).

industrial life for most of that period. Millions of compensation benefits have been paid during this time. Whether paid voluntarily or in contested and adjudicated cases, they have always begun with a wage basis calculation that made 'wage' mean the 'wages' that the worker lives on and not miscellaneous 'values' that may or may not someday have a value to [him or her] depending on a number of uncontrollable contingencies. Before a single court takes it on itself to say, 'We now tell you that, although you didn't know it, you have all been wrongly calculating wage basis in these millions of cases, and so now, after seventy years, we are pleased to announce that we have discovered the true meaning of wage that somehow eluded the rest of you for seven decades,' that court would do well to undertake a much more penetrating analysis . . . of why this revelation was denied to everyone else for so long." 5 A. Larson, Workers' Compensation Law (1997) § 60.12 (b), pp. 10-664 through 10-665.

Finally, our determination that "wages" under § 31-310 does not include insurance and pension benefits is consistent with the reasoning of the United States Supreme Court in *Morrison-Knudsen Construction Co.* v. *Director, Office of Workers' Compensation Programs*, 461 U.S. 624, 630, 103 S. Ct. 2045, 76 L. Ed. 2d 194 (1983), in which the court held that employer contributions to a union trust fund are not considered "wages" as defined in § 2 (13) of the Longshoremen's and Harbor Workers' Compensation Act (compensation act), 33 U.S.C. § 901 et seq.[18] The court in *Morrison-Knudsen Construction Co.* concluded that the contributions did not constitute "money . . . recompensed" or

---

[18] Prior to the 1984 amendment of the compensation act, wages were defined as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury, including the reasonable value of board, rent, housing, lodging or similar advantage received from the employer, and gratuities received in the course of employment from others than the employer." 33 U.S.C. § 902 (13).

"gratuities received . . . from others," nor were they a "similar advantage" to "board, rent, housing, [or] lodging," because board, rent, housing and lodging are present benefits whose cash value can be ascertained readily, whereas the present value of the trust funds cannot be converted easily into a cash equivalent. Id. The court rejected the claimant's argument that the market value of the benefits could be calculated either by the employer's cost to maintain them or by the employee's expectation interests in them. Id., 630–31. Instead, the court concluded that the employer's cost was irrelevant because it failed to measure the employee's benefit, inasmuch as the employee could not spend the amount his employer paid for his benefits on the open market to obtain benefits similar to the group policies he received at work. Id., 630.[19] The Supreme Court concluded that the legislative history of the compensation act, its structure, and the consistent policies of the agency responsible for its enforcement supported its conclusion that the term "wages" did not include fringe benefits. Id., 632.[20] For similar reasons of statutory construction, we reject the plaintiff's contention that he is entitled to the inclusion of his insurance and pension benefits in the calculation of his wage under § 31-310.

## B

We turn briefly to the plaintiff's assertion that vacation and sick pay also should be included in the calculation of an employee's average weekly wage. The

[19] The court also noted that the employee's expectation interest in the funds was speculative: employees had no control over the level of benefits provided and the value of each fund depended on unpredictable factors. *Morrison-Knudsen Construction Co.* v. *Director, Office of Workers' Compensation Programs*, supra, 461 U.S. 631.

[20] According to Professor Larson, the leading commentator on workers' compensation law, "[t]he Supreme Court's view represents the majority position on fringe benefits." 5 A. Larson, supra, § 60.12 (b), p. 10-666.

plaintiff, in maintaining that all of his fringe benefits are includable under § 31-310, has failed to explain why vacation and sick pay should be distinguished from other forms of remuneration, such as insurance and pension benefits, which we have determined do not constitute wages for purposes of § 31-310.[21] In light of the plaintiff's failure to analyze vacation and sick pay separately, we are not required to review the issue. See, e.g., *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44–45, 699 A.2d 101 (1997) (appellate court not required to review claim that has not been sufficiently developed). Accordingly, we leave that question for another day.

## II

The plaintiff also maintains, in the alternative, that excluding his fringe benefits from the calculation of his average weekly wage violates the equal protection clause of the fourteenth amendment to the United States constitution.[22] Specifically, he contends that: (1)

---

[21] As we previously have indicated, the board has determined that, in certain circumstances, vacation and sick pay are includable as wages for purposes of § 31-310. See *Graziano* v. *St. Mary's Hospital*, supra, 11 Conn. Workers' Comp. Rev. Op. 13; see also 5 A. Larson, supra, § 60.12 (b) pp. 10-668 through 10-670 ("[t]here is some disagreement on vacation pay as 'wages' "). Even if we were to adopt the approach taken by the board, however, the plaintiff has not established that he would be entitled to the inclusion of such benefits in the calculation of his average weekly wage. See footnote 11 of this opinion.

[22] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. . . ."

The plaintiff also asserts a violation of the equal protection clause of article first, § 20, of the Connecticut constitution. The plaintiff, however, has failed to provide any independent analysis of this state constitutional claim. Accordingly, we refuse to consider it. See *State* v. *Garcia*, 233 Conn. 44, 66 n.15, 658 A.2d 947 (1995) ("we will not entertain a state constitutional claim unless the [plaintiff] has provided an independent analysis under the particular provisions of the state constitution at issue").

no rational basis exists for denying injured employees the cash equivalent of such benefits because employees who are not injured continue to receive those benefits; and (2) even if the exclusion of the benefits is rationally based, the statutory scheme cannot be justified because it discriminates on the basis of marital status, which, the plaintiff contends, is a suspect classification that gives rise to strict scrutiny of the scheme, a standard that the plaintiff asserts cannot be met. We reject both claims.

"In order to analyze the constitutionality of [the challenged statutory scheme], we must first detail the principles applicable to equal protection analysis. When a statute is challenged on equal protection grounds, whether under the United States constitution or the Connecticut constitution, the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes, the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard wherein the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest. . . . If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge. . . . *Benjamin* v. *Bailey*, 234 Conn. 455, 477, 662 A.2d 1226 (1995)." (Internal quotation marks omitted.) *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 314, 673 A.2d 474 (1996).

"Under the rational basis test, [t]he court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and

reasonable way. . . . *Circuit-Wise, Inc.* v. *Commissioner of Revenue Services*, 215 Conn. 292, 300, 576 A.2d 1259 (1990). In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, see *United States Railroad Retirement [Board]* v. *Fritz*, 449 U.S. 166, 174, 179 [101 S. Ct. 453, 66 L. Ed. 2d 368 (1980), reh. denied, 450 U.S. 960, 101 S. Ct. 1421, 67 L. Ed. 2d 385 (1981)], the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker, see *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U.S. 456, 464 [101 S. Ct. 715, 66 L. Ed. 2d 659, reh. denied, 450 U.S. 1027, 101 S. Ct. 1735, 68 L. Ed. 2d 222] (1981), and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational, see *Cleburne* v. *Cleburne Living Center, Inc.*, [473 U.S. 432, 446, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)]. *Nordlinger* v. *Hahn*, 505 U.S. 1, 11, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992)." (Internal quotation marks omitted.) *Florestal* v. *Government Employees Ins. Co.*, supra, 236 Conn. 314–15. Thus, " 'equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' " *D.A. Pincus & Co.* v. *Meehan*, 235 Conn. 865, 879, 670 A.2d 1278 (1996), quoting *Federal Communications Commission* v. *Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993).

Contrary to the plaintiff's first argument, the legislative decision to exclude certain benefits from the calculation of an injured employee's workers' compensation award was a rational one. In part I A of this opinion,

we already have enumerated a number of the legitimate reasons for doing so that were set forth in *Morrison-Knudsen Construction Co.* v. *Director, Office of Workers' Compensation Programs*, supra, 461 U.S. 624, including the efficient administration of the workers' compensation system. No further discussion of those reasons is necessary here.

The plaintiff's second argument is predicated upon his assertion that General Statutes § 46a-60 (a) (1),[23] which prohibits employers from discriminating on the basis of marital status, manifests a legislative intent "to regard marital status as a suspect class." Building upon that assertion, the plaintiff alleges that excluding fringe benefits from the calculation of an employee's compensation rate impermissibly discriminates against married persons, like the plaintiff, who are more likely "to choose to receive less in take-home pay in order to obtain other forms of remuneration through their employer." This argument is flawed in a number of respects, not the least of which is the plaintiff's unsubstantiated contention that married persons are more likely than unmarried persons to accept a lower salary in return for a higher level of benefits. In the absence of anything in the record to support that assertion, we need not analyze the plaintiff's argument further to reject his claim that the legislative determination to exclude certain benefits from the calculation of an

---

[23] General Statutes § 46a-60 provides in relevant part: "Discriminatory employment practices prohibited. (a) It shall be a discriminatory practice in violation of this section:

"(1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or physical disability, including, but not limited to, blindness . . . ."

employee's average weekly wage impermissibly discriminates on the basis of marital status.

The judgment of the Appellate Court is affirmed.

In this opinion CALLAHAN, C. J., and NORCOTT, KATZ and PETERS, Js., concurred.

MCDONALD, J., concurring. I agree with Justice Berdon that the value of fringe benefits are, by today's common understanding, really part of employee compensation. I also agree that the Workers' Compensation Act looks overall to protect the injured worker's real compensation. It is not our province, however, under the guise of statutory interpretation, to legislate a broader definition of "wages" than has the legislature. We were not appointed to be social engineers, and should leave policy decisions to the legislature. *Claremont School District* v. *Governor*, 142 N.H. 462, 477–78, 703 A.2d 1353 (1997) (Horton, J., dissenting).

BERDON, J., dissenting. The failure to include the value of medical insurance, dental insurance, life insurance, accidental death and dismemberment insurance, disability insurance, pension contribution, and vacation and sick pay—in this case, valued at $170.12 per week—in calculating the plaintiff's average weekly wage for workers' compensation benefits does not make sense. Simply put, the value of the fringe benefits is just as much a part of an employee's wages as the cash the employee receives at the end of the week. For example, there is no practical difference between an employee who is paid $670.12 per week, but is not provided with any of the former fringe benefits, and a second employee who is paid $500 per week, but receives all of the foregoing fringe benefits valued at $170.12 per week. In both cases, the employee's actual weekly earnings is $670.12. Any employer who provides fringe benefits will verify this. According to the majority, however,

the compensation rate for the first employee is more than the compensation rate of the second employee. With all due respect to Professor Larson, mistakes and illogic perpetuated for seventy years, do not justify its continuance. 5 A. Larson, Workers' Compensation Law (1997) § 60.12 (b), pp. 10-664 through 10-665.[1]

The distinction made between the use of "income" and "wages" by the legislature, without more, is too fine of a distinction and is not supported in logic or reason. Our precedent clearly provides that these fringe benefits should be included as part of an employee's compensation. See *Thibeault* v. *General Outdoor Advertising Co.*, 114 Conn. 410, 414, 158 A. 912 (1932) (allowances made to employee for board and lodging while away from home may, under certain circumstances, be considered earnings in determining compensation under Workers' Compensation Act).

Furthermore, the majority's conclusion runs contrary to the liberal construction we must give to the Workers' Compensation Act. "It is well established that the Workers' Compensation Act is remedial in nature and that it should be broadly construed to accomplish its humanitarian purpose. . . . Construing the statute liberally advances its underlying purpose of providing financial protection for injured workers and their dependents." (Citations omitted; internal quotation marks omitted.) *Crook* v. *Academy Drywall Co.*, 219 Conn. 28, 32, 591 A.2d 429 (1991).

Finally, contrary to the majority opinion, including the value of these fringe benefits in the calculation of the plaintiff's average wages would not be inconsistent with the Employee Retirement Income Security Act of 1974 (ERISA).[2] See *District of Columbia* v. *Greater Washington Board of Trade*, 506 U.S. 125, 129–31, 113 S.

---

[1] See pp. 139–40 of the majority opinion.

[2] Pub. L. 93-406, 88 Stat. 829 (1974), codified at 29 U.S.C. § 1001 et seq.

Ct. 580, 121 L. Ed. 2d 513 (1992). In *Greater Washington Board of Trade*, the United States Supreme Court ruled that the District of Columbia's workers' compensation law requiring employers who provide health insurance coverage to provide equivalent coverage to employees who are receiving workers' compensation benefits was preempted by ERISA. Id., 130. According to the Supreme Court, "any state law imposing requirements by reference to [a covered employee benefit plan]"; id., 130–31; "even if the law is not specifically designed to affect such plans, or the effect is only indirect . . . and even if the law is consistent with ERISA's substantive requirements"; (citation omitted; internal quotation marks omitted) id., 130; must yield to ERISA. "Preemption does not occur, however, if the state law has only a tenuous, remote, or peripheral connection with covered plans, *Shaw* v. *Delta Air Lines, Inc.*, 463 U.S. 85, [100 n.21, 103 S. Ct. 2890, 77 L. Ed. 2d 490] (1983) . . . ." (Citations omitted; internal quotation marks omitted.) *District of Columbia* v. *Greater Washington Board of Trade*, supra, 130 n.1. A state law that *calculates* the amount of workers' compensation benefits that an employee must be paid based on the cash wages plus the value of the fringe benefits the employee was paid has, at best, a tenuous connection to a covered plan, and, therefore, is not preempted by ERISA.

Accordingly, I dissent.