[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The court finds the following facts, as stipulated by the parties. The plaintiff, Branford Partnership, was the owner of the Branford Knolls Subdivision (the property). Richard Sullivan was one of three original members of the Branford Partnership and is the only surviving partner. Sullivan is a professional engineer and land surveyor. The property was subdivided into eleven lots in 1988, re-subdivided into twelve lots in 1992, and re-subdivided again into eleven lots in 1992. On or about March 24, 1997, the plaintiff sold a lot designated as Lot 1 to Bruce Pantini and Son, Builders, reserving the right to purchase back a part of lot 1, known as lot 1B, within five years from the date of conveyance. On or about March 24, 1997, Bruce Pantini and Son, Builders, sold lot 1 to Robert and Cheryl Aekins.
The Branford planning and zoning commission implemented regulations effective January, 1988, placing restrictions on steep slopes in CT Page 13102 determining minimum lot area and size. On or about July 29, 1996, the plaintiff filed an application with the planning and zoning commission for approval of a re-subdivision of lot 1 into two lots known as lot 1A and lot 1B. Lot 1 is located in a R-1 district under the zoning regulations, which permits lots with a minimum area of 6000 square feet. Lot 1A is 6000.57 square feet and lot 1B is 6005.14 square feet. On December 5, 1996, the planning and zoning commission voted to deny the plaintiffs application for re-subdivision of lot 1. One of the reasons the commission cited for denying the re-subdivision application was that neither lot 1A or 1B met the minimum lot area requirement for the R-1 zone. The commission stated that, taking into consideration the existence of steep slopes, the area of each lot as defined in § 6.26 of the regulations did not meet the minimum lot area requirements. Section 6.26 is the definition section of the zoning regulations and defines lot area and shape. It provides in pertinent part: "In determining compliance with minimum lot area and shape requirements of these Regulations, land subject to easements . . . may be included . . . . Area consisting of steep slopes (25% or greater), wetlands, watercourses or critical coastal resources . . ., shall not be used for compliance with the minimum lot area. . . ." Section 6.26 does not contain any specific criteria for determining the percentage of slope.
The subdivision regulations of the town of Branford require subdivision or resubdivision application to include, inter alia, a site development plan. (See § 3.2.4.) A site development plan must show "existing contours at an interval not exceeding four feet on steep land and not greater than two feet on rolling land, based on field or aerial survey on town wide topographic maps . . . ." Subdivision Regulations § 3.2.6. Section 3 1.4.2.1 of the zoning regulations provides that applications for site plan approval shall include "existing and proposed contours at intervals of two feet. . . ." Maps and plans required by the subdivision regulations which relate to topography and the delineation of boundary lines must bear the name and seal of a Connecticut licensed land surveyor. See Subdivision Regulations 3.1.
The parties agree that a contour map or topographic map is a two dimensional map on which contour lines are imposed to indicate approximate elevations of land. The parties further agree that, in general, the term "slope" is the ratio of vertical rise of a horizontal distance, expressed as a percentage and that "constant slope" can be measured from any two points on a given parcel over any horizontal distance. Slope can also be measured by the distance between contour lines of a topographic map. Using topographic maps with two foot contour lines to measure slope, it can be determined that lot 1B does not contain 6000 square feet of area with slope of less than 25 per cent. Lot 1B has a 24% slope measured from the front of the lot to the back of the lot. CT Page 13103
The court also finds the following facts. On or about February 4, 1999, the plaintiff filed another application with the Branford planning and zoning commission to re-subdivide the property into two lots. The commission denied that application. On or about June 8, 1999, the plaintiff filed an appeal of the commission's denial in the Superior Court for the judicial district of New Haven at New Haven, which appeal is now pending.
The plaintiff filed this declaratory judgment action seeking a determination from the court that § 6.26 of the Branford zoning regulations does not meet the standards required by Article I, Section 8
of the Connecticut Constitution or the Fourteenth Amendment of the United States Constitution because the regulation is vague and not reasonably related to the health, safety, morals or welfare of the public. The court held a hearing on July 7-8, 1999. Both parties filed post-trial memoranda of law.
In the present case, the plaintiff argues that § 6.26 of the Branford zoning regulations is void for vagueness because the statute gives no guidance as to how an applicant is to measure slope to determine whether sections of the property contain slopes of greater than 25 percent. Specifically, the plaintiff argues that the regulation is vague because it does not indicate whether "area consisting of steep slope" is an existing or proposed condition; it does not define "steep slope (25% or greater);" and the regulation contains no guidelines or criteria on which the commission can rely to determine whether a parcel of land contains slopes of 25 percent or greater. Further, the plaintiff argues that regulation 6.26 is not rationally related to any legitimate planning goal. In response, the defendant argues that the regulation is not unconstitutionally vague because slope is a commonly employed engineering term easily understood by those affected by the regulation. The defendant also argues that merely because there are different ways to measure slope, this does not make the regulation vague. The defendant further argues that even though there are different ways to measure slope, the plaintiff has conceded that measuring slope from front to back is not practical when trying to carry out the purpose of the regulation.
"The purpose of a declaratory judgment action . . . is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties . . . and to make certain that the declaration will conclusively settle the whole controversy." (Citations omitted; internal quotation marks omitted.) Mannweiler v. LaFlamme, 232 Conn. 27, 33, 653 A.2d 168 (1995).
"The vagueness doctrine is based upon two distinct but interrelated CT Page 13104 principles. First, the doctrine requires what Justice Holmes spoke of as fair warning . . . in language that the common world will understand. . . . [L]aws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. . . . A law forbidding or requiring conduct in terms so vague that men of common intelligence necessarily must guess at its meaning and differ as to its application violated due process of law. . . .
"Second, the vagueness doctrine requires that statutes establish minimum guidelines to govern their enforcement. . . . [I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegated basic policy matters . . ., for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (Citations omitted; internal quotation marks omitted.)Packer v. Board of Education, 246 Conn. 89, 99-100 717 A.2d 117 (1998). Nonetheless, "[b]ecause perfect precision is neither possible nor required, however, the [vagueness] doctrine does not mandate the invalidation of all imprecisely drafted statutes. . . . A statute is not unconstitutional merely because a person must inquire further as to the precise reach of its prohibitions, nor is it necessary that a statute list the exact conduct prohibited. . . . The constitution requires no more than a reasonable degree of certainty." (Citations omitted; internal quotation marks omitted.) Id., 101.
"Zoning regulations enjoy a presumption of constitutionality and the party challenging the ordinance has the heavy burden of proving their unconstitutionality beyond a reasonable doubt." Beacon Falls v. Posick,212 Conn. 570, 585, 563 A.2d 285 (1989). "To prove that a statute is unconstitutionally vague, the challenging party must establish that an ordinary person is not able to know what conduct is permitted and prohibited under the statute. . . . The fact that the meaning of the language is fairly debatable is not enough to satisfy the burden of proof." Bottone v. Westport, 209 Conn. 652, 658, 553 A.2d 576 (1989).
Section 6.26 of the Branford zoning regulations provides in pertinent part: "In determining compliance with minimum lot area and shape requirements of these Regulations . . . [a]rea consisting of steep slope (25% or greater) . . ., shall not be used for compliance with minimum lot area. . . ."
The court first addresses the plaintiffs claim that the regulation is unconstitutionally vague. The plaintiff testified that, as a land surveyor and civil engineer, he can define slope. (Transcript 7/7/99, p. 11.) The plaintiff calculated a 25 percent slope as being a rise of one CT Page 13105 foot vertically over a run of four feet horizontally. (Transcript 7/7/99, p. 12) Nonetheless, the plaintiff testified that for the purpose of regulation 6.26, and measuring a subdivision lot, slope can be measured in different ways. (Transcript 7/7/99, p. 17.) One way is to take the elevation at the street line measured against the elevation at the rear corner of the lot. A second method is to draw a contour map. (Transcript 7/7/99, p. 17-18.) The plaintiff further testified that he measured slope differently depending on the purpose of the measurement. (Transcript 7/7/99, p. 19.) The plaintiff testified that, from the regulation, he cannot determine which method is to be used for determining slope for a subdivision. (Transcript 7/7/99, p. 45.) The plaintiff further testified that he does not know, from the regulation, which slopes to ignore, i.e., manmade slopes, and which not to ignore. (Transcript 7/7/99, p. 19-20.)
Despite this apparent confusion, the plaintiff created a site development plan for the property with contour lines. (Transcript 7/7/99, p. 20, 22.) He further testified that from this map he was able to determine which areas of the property contained 25 percent slope. (Transcript 7/7/99, p. 28.) The plaintiff submitted this plan, stamped with his LS number, to the commission. (Transcript 7/7/99, p. 28.) The plaintiff testified that he used two foot contour lines in the plan because that is what the zoning regulations require. (Transcript 7/7/99, p. 29.)
The plaintiff agreed that, when describing the topography of natural land, using constant slope (measuring from the front of the lot to the back) does not make sense. (Transcript 7/7/99, p. 32.) The plaintiff further conceded that some degree of approximation exists in topographical maps. (Transcript 7/7/99, p. 33.) The town provides topographical maps to the public for the purpose of designating slope when submitting a site plan. (Transcript 7/7/99, p. 37.) Nonetheless, the plaintiff conceded that if an applicant thought that the maps were inaccurate, he or she could create his or her own contour maps. (Transcript 7/7/99, p. 38.) Finally, the plaintiff conceded that the only way the property would conform to the R-1 zoning requirements is if the slope was determined by drawing a constant line from the back left corner to the front right corner, in which case the slope would be 24 percent. (Transcript 7/7/99, p. 51-52.)
The plaintiff presented a second civil engineer and expert, David Bjorkland, who testified that there are different ways to measure slope. (Transcript 7/7/99, p. 57.) Bjorkland testified that because there are different methods of measurement, the regulation should refer to a more distinct standard so that there would be no question as to how it should be done. (Transcript 7/7/99, p. 58.) Further, he noted that the CT Page 13106 regulation does not indicate whether the 25 percent slope is an existing or proposed condition. (Transcript 7/7/99, p. 59.) Bjorkland conceded, however, that when measuring an area of just over 6000 square feet, measuring slope from front to back would not accurately portray the area. (Transcript 7/7/99, p. 65-66.)
Glenn Chalder, an expert in zoning regulations and the standards that apply thereto, testified that the use of contour lines is the method typically used to determine slope on natural land. (Transcript 7/7/99, p. 83.) Chalder further testified that using a topographical map is the most accurate method, and that contour maps are generally used for regulatory purposes. (Transcript 7/7/99, p. 90.) Chalder testified that most planners would measure slope using contour lines. (Transcript 7/7/99, p. 99.)
Shirley Rasmussen, Branford's town planner, testified that slopes of 25 percent or greater are subtracted out, whether they are proposed or existing conditions. (Transcript 7/8/99, p. 9.) If the topography of the land will not be changed, then existing slopes are used, but if the topography would be changed by the proposed plans, then the proposed slopes are used. (Transcript 7/8/99, p. 9.) Stephen Dudley, Branford's town engineer, testified that the steep slope restriction applies to both existing and proposed slopes. (Transcript 7/8/99, p. 30.)
Rasmussen testified that while § 6.26, as a definition section for minimum lot requirements, does not give measurement criteria for determining, slope, such criteria can be found in other sections of the zoning regulations and subdivision regulations. (Transcript 7/8/99, p. 18.)
The court finds that § 6.26 is not unconstitutionally vague merely because there are different ways to measure slope. The regulation requires that for the purpose of determining minimum lot area, slopes of 25 percent or greater are to be subtracted out from the total square footage of the lot. A 25 percent slope is not a standardless calculation, but a geometrical function capable of mathematical exactness. Further, licensed professional land surveyors know how to calculate slope. Second, the regulation is not vague merely because it requires an applicant to make further inquiry either to other sections of the regulations, or to the commission regarding a measurement standard.Packer v. Board of Education, supra, 246 Conn. 101. According to the expert testimony, including that of the plaintiff in this case, slope for natural land can be best calculated, and the topography of natural land can be described best using contour lines. Therefore, the regulation, when taken in its proper context within the entire zoning and subdivision regulations, is not so devoid of standards as to be unconstitutionally CT Page 13107 vague. See Packer v. Board of Education, supra, 246 Conn. 101; see alsoNew London v. Zoning Board of Appeals, 29 Conn. App. 402, 407,615 A.2d 1054, cert. granted on other grounds, 224 Conn. 921, 618 A.2d 529
(1992) (holding that "[w]hen construing a zoning regulation, our primary goal is to ascertain and give effect to the intent of the local legislative body as expressed in the regulation as a whole. It is neither our purpose nor our intention, however, to engage in microscopic examination of these regulations in an attempt to uncover technical infirmities and render the regulations ineffective.").
With regard to the plaintiffs second claim, the court finds that § 6.26 is rationally related to a legitimate planning goal. Rasmussen, the town planner, testified that there were several reasons for the 25 percent slope restriction. First, the town was interested in retaining side yards, so that, in the future, an occupant would be able to place objects on a lot that are common to home ownership, such as a shed, swimming pool or play area. (Transcript 7/8/99, p. 16-17.) The ultimate purpose of this forethought is to avoid the need for homeowners to apply for variances for these common occurrences. (Transcript 7/8/99, p. 17.) Second, the town was concerned with drainage and excessive run-off into downhill neighbors' yards, and erosion into a watercourse, which have the potential of creating pollution problems. (Transcript 7/8/99, p. 17.) Rasmussen testified that the steeper the slope on the land, the faster the run-off and the more problems that are created. (Transcript 7/8/99, p. 17.) While Bjorkland and Rasmussen testified that drainage problems can be mitigated by good engineering (Transcript 7/7/99, p. 63; Transcript 7/8/99, p. 22.), the plaintiff presented no evidence that slopes of 25 percent or greater do not create fast or excessive run-off. Furthermore, the plaintiff put forth no evidence that the regulations did not, in fact, prevent the filing of variance applications. The plaintiff further failed to offer evidence that such a goal is not legitimate, and, therefore, he failed to satisfy his burden. Therefore, the plaintiff has failed to prove that the determination of the commission regarding steep slopes (25 percent or greater) is not rationally related to a legitimate planning goal.
"Under the rational basis test, [t]he court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish the purpose in a fair and reasonable way." (Internal quotation marks omitted.) Luce v.United Technologies Corp., 247 Conn. 126, 143, 717 A.2d 747 (1998). "[T]herefore, the plaintiffs must establish [a regulation's] invalidity beyond a reasonable doubt." Mario v. Town of Fairfield, 217 Conn. 164,176, 585 A.2d 87 (1991). "The test of illegality is whether the regulation is rationally related to the protection of the public health, safety and general welfare of the community. . . . [C]ourts can interfere CT Page 13108 only in those extreme circumstances where the action taken is unreasonable, discriminatory or arbitrary." Beacon Falls v. Posick,212 Conn. 570, 585, 563 A.2d 285 (1989). "[A] presumption of validity is accorded to municipal ordinances. Every intendment is to be made in favor of the validity of the ordinance, and it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.)Pollio v. Planning Commission, 232 Conn. 44, 49, 652 A.2d 1026 (1995).
In the present case, the prevention of water pollution for excessive run-off and erosion is a stated purpose for the 25 percent restriction. Environmental conservatism is a legitimate concern in the context of zoning regulations. Knight v. F.L. Roberts Co., 241 Conn. 466, 474696 A.2d 1249 (1997); Smith v. Zoning Board of Appeals, 227 Conn. 71,84, 629 A.2d 1089, cert. denied, 510 U.S. 1164, 114 S.Ct. 1190,127 L.Ed.2d 540 (1994).
Accordingly, the court finds that the commission's purpose, as testified to by Rasmussen, is a legitimate goal. See R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 4.29; see also Masiello v. Zoning Board of Appeals, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 139064 (August 21, 1996, Ryan, J). Regulation 6.26 is rationally related to these legitimate goals. As Rasmussen testified, a steep slope of 25 percent creates a faster run-off and erosion. As Dudley testified, common usage, such as a child's swing set, cannot be built and/or placed on a 25 percent slope. Accordingly, the court finds that the stated goals of the Branford planning and zoning commission with respect to regulation 6.26 are legitimate goals and that regulation 6.26 is rationally related to those legitimate goals.
Based on the foregoing, the court finds that regulation 6.26 is not unconstitutionally vague, that it is rationally related to a legitimate planning goal. The plaintiffs appeal is dismissed.
JOHN W. MORAN, JUDGE