COX CABLE ADVISORY COUNCIL *v.* DEPARTMENT OF PUBLIC UTILITY CONTROL ET AL.
(SC 16538)

Sullivan, C. J., and Borden, Katz, Vertefeuille and Zarella, Js.

Argued September 13, 2001—officially released January 15, 2002

*Edward G. Pizzella,* for the appellant (plaintiff).

*Robert L. Marconi,* assistant attorney general, for the appellee (named defendant).

*Burton B. Cohen,* with whom, on the brief, was *Sharon L. Codeanne,* for the appellee (defendant Cox-Com Connecticut, Inc.).

*Phyllis J. Trowbridge,* with whom, on the brief, were *Guy R. Mazza* and *Melissa Day,* for the appellee (defendant office of consumer counsel).

*Opinion*

KATZ, J. The dispositive issue in this appeal is whether the plaintiff, the Cox Cable Advisory Council (advisory council), may appeal from the decision of the defendant franchising authority, the department of public utility control (department), granting to the defendant CoxCom Connecticut, Inc., doing business as Cox Communications Connecticut/Manchester (Cox Cable), a renewal of its franchise. The advisory council appeals from the judgment of the trial court dismissing its appeal from the department's decision to renew Cox Cable's franchise.[1] We determine that federal law pre-

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

empts parties other than the cable operator from appealing the renewal of a cable franchise and that, accordingly, the trial court's dismissal of the action, albeit on different grounds, was proper.

The record contains the following undisputed facts relevant to this appeal. On April 7, 1998, Cox Cable filed with the department[2] an application, pursuant to General Statutes §§ 16-331 and 16-333, and § 16-333-38 of the Regulations of Connecticut State Agencies, for renewal of its authorization to construct and operate a community antenna television system, pursuant to a franchise or certificate of public convenience and necessity, for the franchise area consisting of the towns of Glastonbury, Manchester, Newington, Rocky Hill, South Windsor and Wethersfield. In accordance with the detailed procedural road map set forth by the Cable Communications Policy Act of 1984 (Cable Act); 47 U.S.C. § 521 et seq.; and under Connecticut's implementation of this process; see Regs., Conn. State Agencies §§ 16-333-38 (a), 16-333-40 (b); Cox Cable submitted the requisite information to the department. Thereafter, in accordance with General Statutes § 16-331 (d) (5), and §§ 16-333-38 (b) and 16-333-40 of the regulations, the department held a hearing at which it designated Cox Cable and the office of consumer counsel[3] as parties

[2] The department is the state agency designated as the franchising authority to grant and renew cable television franchises in Connecticut. See 47 U.S.C. § 522 (10) and General Statutes § 16-331 (a).

[3] The office of consumer counsel's responsibility emanates from General Statutes § 16-2a (a), which provides: "There shall continue to be an independent Office of Consumer Counsel, within the Department of Public Utility Control for administrative purposes only, to act as the advocate for consumer interests in all matters which may affect Connecticut consumers with respect to public service companies, electric suppliers and certified telecommunications providers. The Office of Consumer Counsel is authorized to appear in and participate in any regulatory or judicial proceedings, federal or state, in which such interests of Connecticut consumers may be involved, or in which matters affecting utility services rendered or to be rendered in this state may be involved. The Office of Consumer Counsel shall be a party to each contested case before the Department of Public Utility Control and shall participate in such proceedings to the extent it deems necessary.

to the proceeding. Additionally, the department designated the advisory council, established pursuant to § 16-333-24 et seq. of the Regulations of Connecticut State Agencies[4] as the council to provide advice to the subject franchise area serviced by Cox Cable, as an intervenor pursuant to § 16-331 (c) (2). Following his request, the mayor of the town of Wethersfield was also granted intervenor status in the administrative proceedings.

Pursuant to § 16-331 (f), the department ordered a community needs assessment, the results of which were provided to the parties as well as the intervenors. Thereafter, Cox Cable submitted its proposal for renewal, which the department considered at several public hearings at which all the parties and the intervenors were afforded the opportunity to present evidence. A draft decision was issued, and the parties and the intervenors were afforded the opportunity to object. Specifically, the department invited all participants to file written exceptions to the draft decision and to notify the department of their intentions to present oral argument regarding the draft decision at a subsequent public hearing. After written objections were filed and oral arguments were presented, the department, on December 22, 1999, issued its final decision offering to renew Cox

Said Office of Consumer Counsel may appeal from a decision, order or authorization in any such state regulatory proceeding notwithstanding its failure to appear or participate in said proceeding."

Although § 16-2a (a) was amended after the administrative proceedings in this case were initiated; see Public Acts 1998, No. 98-28, and Public Acts 1999, No. 99-286; the changes were minor and technical in nature and not relevant to this appeal. For purposes of clarity, references herein to § 16-2a (a) are to the current revision.

[4] Section 16-333-24 of the Regulations of Connecticut State Agencies provides: "Establishment of cable television advisory council

"There shall be established a cable television advisory council, hereinafter referred to as advisory council, consisting of representatives of the towns in each area where the Public Utilities Commission has granted a certificate of public convenience and necessity to a cable television company as franchise holder under authority of Chapter 289 of the General Statutes."

Cable's franchise, subject to various terms and conditions. Following Cox Cable's submission of a revised proposal for renewal that conformed with the department's decision, Cox Cable and the department executed a final revised franchise agreement.

The advisory council appealed from the decision to the Superior Court, contending that it was aggrieved by the department's decision renewing Cox Cable's franchise because the decision violated the Uniform Administrative Procedures Act (UAPA).[5] Cox Cable moved to dismiss the appeal, claiming that, because the question of aggrievement is essentially one of standing and thereby implicates the court's subject matter jurisdiction, the advisory council's failure to allege aggrievement deprived the trial court of jurisdiction to hear the appeal. *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 701, 780 A.2d 1 (2001) (noting basic principle of law that plaintiff must have standing for court to have jurisdiction). Cox Cable further claimed that the trial court lacked jurisdiction because the advisory council was preempted under federal law from bringing its appeal. Thereafter, the advisory council filed an amended appeal alleging additional facts in order to address the issue of aggrievement. The department then filed its own motion to dismiss based on the advisory council's failure to establish aggrievement, and the court considered both motions together.

In reliance on *Simko* v. *Zoning Board of Appeals*, 205 Conn. 413, 533 A.2d 879 (1987), aff'd, 206 Conn. 374, 538 A.2d 202 (1988), the trial court determined that the amended appeal properly could not be considered by the court because the amendment had been filed after expiration of the forty-five day appeal period set

---

[5] See General Statutes § 4-166 et seq.

forth in General Statutes § 4-183 (c).[6] The trial court thereafter focused on the original appeal and concluded that the advisory council's failure to allege facts showing aggrievement warranted dismissal of the appeal. Specifically, the court noted that the mere allegation by the advisory council that a section of the UAPA had not been followed was, in and of itself, insufficient to establish aggrievement. The trial court also noted that the reference in the amended appeal to the fact that the advisory council performs "functions customarily delegated to such councils by the statutes and regulations of the state of Connecticut" would not satisfy the jurisdictional requirement. Accordingly, the trial court dismissed the advisory council's appeal without addressing Cox Cable's jurisdictional challenge based on federal preemption.[7] This appeal followed.

---

[6] General Statutes § 4-183 (c) provides in relevant part: "Within forty-five days after mailing of the final decision under section 4-180 or, if there is no mailing, within forty-five days after personal delivery of the final decision under said section, a person appealing as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision at its office . . . ."

[7] The office of consumer counsel also appealed from the department's decision approving the renewal of the franchise agreement, and Cox Cable moved to dismiss that appeal, claiming that: (1) the appeal is preempted by 47 U.S.C. §§ 546, 555; (2) the office of consumer counsel is not aggrieved by the decision extending its franchise; and (3) the office of consumer counsel is collaterally estopped from contesting the methodology of the department because of its prior failures in other cases to object to the department's approach. The trial court rejected Cox Cable's preemption argument, concluding that, because "the [office of consumer counsel] was established as an independent agency in 1975, nine years before the federal Cable Communications Policy Act . . . [it] has a clear place in the regulatory scheme for the approval and renewal of cable franchises." The court also rejected Cox Cable's other arguments regarding the office of consumer counsel, thereby allowing the office of consumer counsel's appeal to proceed to trial.

Although that appeal did proceed to trial, the trial court ultimately dismissed it based upon its determination that, under the facts of the case, the issue that the office of consumer counsel wanted the court to resolve was not at controversy. No appeal was filed by the office of consumer counsel from that judgment of dismissal.

The advisory council makes three claims: (1) the present action is not preempted by the Cable Act; (2) the original appeal alleged sufficient facts to establish aggrievement; and (3) the amended appeal cured any deficiencies in the original appeal and should have been considered by the court. Cox Cable both defends the trial court's decision on the issue of aggrievement and offers federal preemption as an alternate ground for affirmance.[8] We agree with Cox Cable that federal law preempts parties other than the cable operator from appealing the renewal of a cable franchise and that, accordingly, the trial court's dismissal of the action, albeit on different grounds, was proper.

Our resolution of the dispositive issue in this appeal, that is, whether the state trial court was divested of subject matter jurisdiction to entertain the action by the advisory council, a third party to the underlying franchise renewal application, is guided by the doctrine of federal preemption as disclosed by the application of the appropriate canons of statutory construction.

"The question of preemption is one of federal law, arising under the supremacy clause of the United States constitution. . . . Determining whether Congress has exercised its power to preempt state law is a question of legislative intent. . . . [A]bsent an explicit statement that Congress intends to preempt state law, courts should infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law . . . or where the state law at issue conflicts with federal law, either because it is impossible to comply

---

[8] Following oral argument before this court, the department and the office of consumer counsel, a party to this appeal pursuant to General Statutes § 16-2a (a); see footnote 3 of this opinion; were ordered to file supplemental briefs on the following issue: "Whether the [advisory council's] action is preempted by the Federal Communications Act of 1934, as amended by the Cable Communications Policy Act of 1984 (47 U.S.C. § 521 et seq.)."

with both . . . or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives . . . . *Dowling* v. *Slotnik*, 244 Conn. 781, 791, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998)." (Internal quotation marks omitted.) *Barbieri* v. *United Technologies Corp.*, 255 Conn. 708, 717, 771 A.2d 915 (2001).

Our resolution of this case is also guided by our statutory construction jurisprudence. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 133, 717 A.2d 747 (1998). In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended. *Kron* v. *Thelen*, 178 Conn. 189, 192, 423 A.2d 857 (1979); accord *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 26, 717 A.2d 77 (1998). Finally, because the question presented [in] this appeal involves an issue of statutory construction, our review is plenary. E.g., *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 318, 702 A.2d 1180 (1997)." (Internal quotation marks omitted.) *Schreck* v. *Stamford*, 250 Conn. 592, 596–97, 737 A.2d 916 (1999); accord *Connelly* v. *Commissioner of Correction*, 258 Conn. 394, 403, 780 A.2d 903 (2001).

Against this background, we begin with a brief history of the pertinent provisions of the governing legislation

along with a discussion of the relative roles played by the governing authorities. We begin with the Cable Act, which amended the federal Communications Act of 1934, the purpose of which was to provide a federal framework that would encourage investment in cable television systems and technology on a national level. See 47 U.S.C. § 521.[9] The Cable Act was enacted in order to "provide and delineate within Federal legislation the authority of Federal, state and local governments to regulate cable systems." (Internal quotation marks omitted.) *Cable Television Assn. of New York, Inc.* v. *Finneran*, 954 F.2d 91, 97 (2d Cir. 1992). Particularly relevant to this appeal is the purpose behind the provision addressing franchise renewals, which is intended to "establish an orderly process for franchise renewal which *protects cable operators* against unfair denials of renewal where the operator's past performance and proposal for future performance meet the standards established by this subchapter . . . ." (Emphasis added.) 47 U.S.C. § 521 (5). To implement these goals, the Cable Act sets forth a detailed scheme for renewal

---

[9] Title 47 of the United States Code, § 521, provides: "The purposes of this subchapter are to—

"(1) establish a national policy concerning cable communications;

"(2) establish franchise procedures and standards which encourage the growth and development of cable systems and which assure that cable systems are responsive to the needs and interests of the local community;

"(3) establish guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems;

"(4) assure that cable communications provide and are encouraged to provide the widest possible diversity of information sources and services to the public;

"(5) establish an orderly process for franchise renewal which protects cable operators against unfair denials of renewals where the operator's past performance and proposal for future performance meet the standards established by this subchapter; and

"(6) promote competition in cable communications and minimize unnecessary regulation that would impose an undue economic burden on cable systems."

## of cable franchises. See 47 U.S.C. § 546.[10] Federal law

[10] Title 47 of the United States Code, § 546, provides: "Renewal

"(a) Commencement of proceedings; public notice and participation

"(1) A franchising authority may, on its own initiative during the 6-month period which begins with the 36th month before the franchise expiration, commence a proceeding which affords the public in the franchise area appropriate notice and participation for the purpose of (A) identifying the future cable-related community needs and interests, and (B) reviewing the performance of the cable operator under the franchise during the then current franchise term. If the cable operator submits, during such 6-month period, a written renewal notice requesting the commencement of such a proceeding, the franchising authority shall commence such a proceeding not later than 6 months after the date such notice is submitted.

"(2) The cable operator may not invoke the renewal procedures set forth in subsections (b) through (g) of this section unless—

"(A) such a proceeding is requested by the cable operator by timely submission of such notice; or

"(B) such a proceeding is commenced by the franchising authority on its own initiative.

"(b) Submission of renewal proposals; contents; time

"(1) Upon completion of a proceeding under subsection (a), a cable operator seeking renewal of a franchise may, on its own initiative or at the request of a franchising authority, submit a proposal for renewal.

"(2) Subject to section 624 [47 USCS § 544], any such proposal shall contain such material as the franchising authority may require, including proposals for an upgrade of the cable system.

"(3) The franchising authority may establish a date by which such proposal shall be submitted.

"(c) Notice of proposal; renewal; preliminary assessment of nonrenewal; administrative review; issues; notice and opportunity for hearing; transcript; written decision

"(1) Upon submittal by a cable operator of a proposal to the franchising authority for the renewal of a franchise pursuant to subsection (b), the franchising authority shall provide prompt public notice of such proposal and, during the 4-month period which begins on the date of the submission of the cable operator's proposal pursuant to subsection (b), renew the franchise or, issue a preliminary assessment that the franchise should not be renewed and, at the request of the operator or on its own initiative, commence an administrative proceeding, after providing prompt public notice of such proceeding, in accordance with paragraph (2) to consider whether—

"(A) the cable operator has substantially complied with the material terms of the existing franchise and with applicable law;

"(B) the quality of the operator's service, including signal quality, response to consumer complaints, and billing practices, but without regard to the mix or quality of cable services or other services provided over the system,

## both sets forth the terms and conditions with which a

has been reasonable in light of community needs;

"(C) the operator has the financial, legal, and technical ability to provide the services, facilities, and equipment as set forth in the operator's proposal; and

"(D) the operator's proposal is reasonable to meet the future cable-related community needs and interests, taking into account the cost of meeting such needs and interests.

"(2) In any proceeding under paragraph (1), the cable operator shall be afforded adequate notice and the cable operator and the franchise authority, or its designee, shall be afforded fair opportunity for full participation, including the right to introduce evidence (including evidence related to issues raised in the proceeding under subsection [a]), to require the production of evidence, and to question witnesses. A transcript shall be made of any such proceeding.

"(3) At the completion of a proceeding under this subsection, the franchising authority shall issue a written decision granting or denying the proposal for renewal based upon the record of such proceeding, and transmit a copy of such decision to the cable operator. Such decision shall state the reasons therefor.

"(d) Basis for denial

"Any denial of a proposal for renewal that has been submitted in compliance with subsection (b) shall be based on one or more adverse findings made with respect to the factors described in subparagraphs (A) through (D) of subsection (c) (1), pursuant to the record of the proceeding under subsection (c). A franchising authority may not base a denial of renewal on a failure to substantially comply with the material terms of the franchise under subsection (c) (1) (A) or on events considered under subsection (c) (a) (B) in any case in which a violation of the franchise or the events considered under subsection (c) (1) (B) occur after the effective date of this title unless the franchising authority has provided the operator with notice and the opportunity to cure, or in any case in which it is documented that the franchising authority has waived its right to object, or the cable operator gives written notice of a failure or inability to cure and the franchising authority fails to object within a reasonable time after receipt of such notice.

"(e) Judicial review; grounds for relief

"(1) Any cable operator whose proposal for renewal has been denied by a final decision of a franchising authority made pursuant to this section, or has been adversely affected by a failure of the franchising authority to act in accordance with the procedural requirements of this section, may appeal such final decision or failure pursuant to the provisions of section 555 of this title.

"(2) The court shall grant appropriate relief if the court finds that—

"(A) any action of the franchising authority, other than harmless error, is not in compliance with the procedural requirements of this section; or

renewed franchise must comply; see, e.g., 47 U.S.C. § 552; as well as prohibits the conditioning of a renewed franchise upon other terms and conditions. See 47 U.S.C. § 541 (b) (3) (D). In 1985, in order to conform with federal law, General Statutes § 16-331 was amended to provide for renewals consistent with the Cable Act; Public Acts 1985, No. 85-509, § 6; and, in the present case, pursuant to § 16-331 (d) (5),[11] the depart-

"(B) in the event of a final decision of the franchising authority denying the renewal proposal, the operator has demonstrated that the adverse finding of the franchising authority with respect to each of the factors described in subparagraphs (A) through (D) of subsection (c) (1) on which the denial is based is not supported by a preponderance of the evidence, based on the record of the proceeding conducted under subsection (c) of this section.

"(f) Finality of administrative decision

"Any decision of a franchising authority on a proposal for renewal shall not be considered final unless all administrative review by the State has occurred or the opportunity therefor has lapsed.

"(g) 'Franchise expiration' defined

"For purposes of this section the term 'franchise expiration' means the date of the expiration of the term of the franchise, as provided under the franchise, as it was in effect on [the date of the enactment of this title] Oct. 30, 1984.

"(h) Alternative renewal procedures

"Notwithstanding the provisions of subsections (a) through (g) of this section, a cable operator may submit a proposal for the renewal of a franchise pursuant to this subsection at any time, and a franchising authority may, after affording the public adequate notice and opportunity for comment, grant or deny such proposal at any time (including after proceedings pursuant to this section have commenced). The provisions of subsections (a) through (g) of this section shall not apply to a decision to grant or deny a proposal under this subsection. The denial of a renewal pursuant to this subsection shall not affect action on a renewal proposal that is submitted in accordance with subsections (a) through (g) of this section.

"(i) Effect of renewal procedures upon action to revoke franchise for cause

"Notwithstanding the provisions of subsections (a) through (h), any lawful action to revoke a cable operator's franchise for cause shall not be negated by the subsequent initiation of renewal proceedings by the cable operator under this section."

[11] General Statutes § 16-331 (d) (5) provides: "The department shall adopt regulations in accordance with chapter 54, establishing procedures and standards for the renewal of certificates issued to community antenna television companies. Such regulations shall, without limitation, (A) incorporate the provisions of the Communications Act of 1934, 47 USC 546, (B) require

ment promulgated specific regulations pertaining to cable television franchise renewals. See Regs., Conn. State Agencies § 16-333-38.[12]

For the purposes of the present case, there are three key federal provisions. The first is 47 U.S.C. § 546, specifically, subsection (e) (1), which sets forth the express

the department to consult with the advisory council for the franchise area served by the certificate holder before making a decision concerning the renewal of the certificate, (C) require any holder of a certificate which is not renewed by the department to continue to operate the franchise for one year after the end of its term or until a successor is chosen and ready to assume control of the franchise, whichever is sooner, (D) establish standards for the content of notices sent to cable subscribers concerning public hearings for franchise renewal proceedings which standards shall include, without limitation, the requirements specified in subdivision (6) of this subsection, (E) establish standards to ensure that the costs and expenses of a municipality constructing, purchasing or operating a community antenna television company are accurately attributed to such company, and (F) establish quality standards for the instructional and educational channels. The department shall adopt regulations pursuant to this subdivision in conjunction with the Commission for Educational Technology."

A minor technical change that is not relevant to this appeal was made to § 16-331 (d) (5) by Public Acts 2000, No. 00-187. For purposes of clarity, we refer herein to the current revision of the statute.

[12] Section 16-333-38 of the Regulations of Connecticut State Agencies provides: "Informal renewals

"(a) A franchise holder may submit an application to the Public Utilities Control Authority for approval of a proposal for the renewal, extension, or transfer of a certificate, pursuant to Connecticut General Statutes section 16-331, at any time. A proposal for renewal, extension or transfer of a certificate submitted under this section of the regulations shall not be complete unless it contains information as required by section 16-333-40 (b) of these regulations. Such information shall be provided either in the statement of application or as exhibits annexed thereto and accompanying the application.

"(b) Upon submission of the proposal for renewal, extension or transfer of a certificate by a franchise holder pursuant to this section of the regulations, the department may, after holding a public hearing and consulting with the Advisory Council, grant or deny such proposal at any time, including after proceedings pursuant to section 16-333-39 of these regulations have commenced.

"(c) The denial of a renewal, extension, or transfer of a certificate proposal submitted under this section shall not affect action on any proposal that is submitted in accordance with section 16-333-39 of these regulations."

provision for judicial review: *"Any cable operator* whose proposal for renewal has been denied by a final decision of a franchising authority made pursuant to this section, or has been adversely affected by a failure of the franchising authority to act in accordance with the procedural requirements of this section, may appeal such final decision or failure pursuant to the provisions of section 555 of this title." (Emphasis added.) See footnote 10 of this opinion. The second provision is 47 U.S.C. § 555 (a),[13] which provides in part, with regard to an action to review determinations by franchising authorities: *"Any cable operator* adversely affected by any final determination made by a franchising authority under section 541 (a) (1), 545 or 546 of this title may commence an action within 120 days after receiving notice of such determination . . . in [either] (1) the district court of the United States for any judicial district

---

[13] Title 47 of the United States Code, § 555, provides: "Judicial proceedings

"(a) Actions to review determinations by franchising authorities.

"Any cable operator adversely affected by any final determination made by a franchising authority under section 541 (a) (1), 545 or 546 of this title may commence an action within 120 days after receiving notice of such determination, which may be brought in—

"(1) the district court of the United States for any judicial district in which the cable system is located; or

"(2) in any State court of general jurisdiction having jurisdiction over the parties.

"(b) Available relief

"The court may award any appropriate relief consistent with the provisions of the relevant section described in subsection (a) and with the provisions of subsection (a) of this section.

"(c) Review of constitutionality of sections 534 and 535

"(1) Notwithstanding any other provision of law, any civil action challenging the constitutionality of section 534 or 535 of this title or any provision thereof shall be heard by a district court of three judges convened pursuant to the provisions of section 2284 of title 28.

"(2) Notwithstanding any other provision of law, an interlocutory or final judgment, decree, or order of the court of three judges in an action under paragraph (1) holding section 534 or 535 of this title or any provision thereof unconstitutional shall be reviewable as a matter of right by direct appeal to the Supreme Court. Any such appeal shall be filed not more than 20 days after entry of such judgment, decree, or order."

in which the cable system is located; or (2) in any State court of general jurisdiction having jurisdiction over the parties." (Emphasis added.) Because these provisions expressly identify only the incumbent cable operator as the party able to obtain judicial review of a decision of a franchising authority, we conclude that, in light of the third key provision, 47 U.S.C. § 556 (c),[14] which provides in part that "any provision of law of any State . . . which is inconsistent with this chapter shall be deemed preempted and superseded," no other party may appeal such a decision.

Our determination rests, however, on more than that delineation. We note that the provisions related to a renewal franchise, in specific, 47 U.S.C. § 546 (e) (1) and (2) and 47 U.S.C. § 555, allow for judicial review of a decision or action in a franchise renewal in only three instances, *none* of which expressly pertains to the advisory council. A cable operator may appeal a decision when (1) it has been affected adversely by a franchising authority's failure to comply with the proce-

---

[14] Title 47 of the United States Code, § 556, provides: "Coordination of Federal, State, and local authority

"(a) Regulation by States, political subdivisions, State and local agencies, and franchising authorities

"Nothing in this subchapter shall be construed to affect any authority of any State, political subdivision, or agency thereof, or franchising authority, regarding matters of public health, safety, and welfare, to the extent consistent with the express provisions of this subchapter.

"(b) State jurisdiction with regard to cable services

"Nothing in this subchapter shall be construed to restrict a State from exercising jurisdiction with regard to cable services consistent with this subchapter.

"(c) Preemption

"Except as provided in section 557 of this title, any provision of law of any State, political subdivision, or agency thereof, or franchising authority, or any provision of any franchise granted by such authority, which is inconsistent with this chapter shall be deemed to be preempted and superseded.

"(d) 'State' defined

"For purposes of this section, the term 'State' has the meaning given such term in section 153 (v) of this title."

dural requirements of 47 U.S.C. § 546, (2) when its proposal for renewal has been denied, or (3) when its proposal has been granted subject to specified conditions that the operator refuses to accept.

Although those provisions do not expressly prohibit any other party from appealing the department's decision, the legislative history supports this limited reading of the Cable Act. A report prepared by the House Committee on Energy and Commerce provides: "A cable operator adversely affected by a franchising authority's failure to comply at any time with the procedural requirements of this section or whose proposal for renewal is denied may appeal to state court or to the U.S. District Court under the provisions of section 636. If a franchising authority grants renewal but subject to specified conditions which the operator refuses to accept, the operator may appeal that decision as if it were a denial." House Committee on Energy and Commerce, Cable Franchise Policy and Communications Act of 1984, H.R. Rep. No. 98-934, p. 75 (1984) (House Report); see *Cable Investments, Inc.* v. *Woolley,* 867 F.2d 151, 155 (3d Cir. 1989) (referring to House Report as "the principal source of legislative history on the Cable Act"). More important, for purposes of this appeal, the House Report expressly explains that where the "incumbent [cable operator] is granted renewal pursuant to his proposal, there is *no right of appeal by any other party.*"[15] (Emphasis added.) H.R. Rep. No. 98-934, p. 75.

---

[15] We recognize that "the House Report was written before the Senate amended the renewal provision to require public participation in the renewal process." M. Myerson, "The Cable Communications Policy Act of 1984: A Balancing Act on the Coaxial Wires," 19 Ga. L. Rev. 543, 583–84 (1985). We read the mandate on the part of the department to consult with the advisory council for the franchise area served by the certificate holder before making a decision concerning the renewal of the certificate, as set forth in § 16-331 (d) (5) (B), not as an expansion of who may appeal, but, rather, as a delineation of a ground upon which to appeal.

Furthermore, we note that when Congress has intended to provide rights to third parties, it specifically has done so. Compare 47 U.S.C. § 546 with 47 U.S.C. § 532 (d) (person aggrieved by cable operator's refusal to make channel capacity available may sue in federal court), 47 U.S.C. § 553 (any person harmed by unauthorized interception of cable service may bring civil action), and 47 U.S.C. § 551 (subscriber has private right of action for violation of privacy). "Congress for reasons of its own decided upon the method for the protection of the 'right' which it created. It selected the precise machinery and fashioned the tool which it deemed suited to that end. . . . In such a case the specification of one remedy normally excludes another." (Citation omitted.) *Switchmen's Union of North America* v. *National Mediation Board,* 320 U.S. 297, 301, 64 S. Ct. 95, 88 L. Ed. 61 (1943); see *Touche Ross & Co.* v. *Redington,* 442 U.S. 560, 572, 99 S. Ct. 2479, 61 L. Ed. 2d 82 (1979) (express availability of certain private actions establishes that, "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly").

In view of Congress' clear intent to limit the parties and circumstances under which review may be sought, we are hard pressed to conclude that there is otherwise an inherent right to appeal the terms and conditions of a franchise renewal in contravention of the intent to the contrary. Indeed, preemption jurisprudence forbids such a conclusion *Cable Television Assn. of New York, Inc.* v. *Finneran,* supra, 954 F.2d 98; see *Westmarc Communications, Inc.* v. *Dept. of Public Utility Control,* United States District Court, Docket No. CVH89-631, 1990 U.S. Dist. LEXIS 20080 (D. Conn. May 4, 1990) (attempt to prohibit cable operators from factoring into basic service rates civil penalty imposed by department preempted by provisions prohibiting regulation of cable systems as utilities); *Time Warner Entertainment Co.*

v. *Briggs*, United States District Court, Docket No. CV92-40117-GN, 1993 U.S. Dist. LEXIS 1196 (E.D. Mass. January 14, 1993) (town bylaws requiring appointment of arbitrator when cable operator and local franchising authority are unable to agree on amendment provisions to franchise preempted by 47 U.S.C. §§ 545 [b] and 555 permitting operator to seek judicial review when request for modification of franchise has been denied); *MediaOne Group, Inc.* v. *Henrico*, 97 F. Sup. 2d 712, 713 (E.D. Va. 2000), aff'd, 257 F.3d 356 (4th Cir. 2001) (requirement for franchise renewal that cable operator provide its cable modem platform facility to any internet service provider preempted by 47 U.S.C. § 541 [C] [3] [D], which prohibits local franchising authority from requiring cable operators to provide telecommunication facilities as condition of franchise renewal).

The advisory council suggests that a determination by this court that it is preempted from pursuing this appeal "would be tantamount to a holding that the [s]tate of Connecticut and the [d]epartment, its designated regulatory authority, are powerless to establish the procedures for cable franchise renewal." We first note that nothing in this opinion undermines the legitimate reliance on the department as the state agency authorized to regulate and supervise cable operators requesting renewal of their franchises to hold hearings on the relevant issues and to make determinations regarding whether the operator is qualified to have its franchise renewed. Moreover, it is the right of the advisory council to appeal the renewal that is at issue in this case, not the authority of the department. Because the advisory council has no regulatory authority over Cox Cable,[16] our determination that it is preempted from

---

[16] Indeed, the advisory council is a group of volunteers chosen to advise the management of Cox Cable on matters affecting the public, file reports on an annual basis to the department; Regs., Conn. State Agencies § 16-333-30; intervene in contested cases before the department involving the franchises the council advises, and file petitions with the department on behalf of any customer being denied service. General Statutes §§ 16-331a

appealing the department's decision regarding Cox Cable's franchise renewal has *no* impact on the congressionally mandated regime of local authority over the cable franchising process.

Underlying the advisory council's argument is, essentially, the view that its role is tantamount to a second office of consumer counsel, with the power to enforce its advice against the department and local franchises, despite any such grant of authority from the legislature. We disagree with the advisory council's characterization of its role. The advisory council's argument, however, does implicate the question of whether the office of consumer counsel may appeal a franchise renewal by the department. That question, although not directly raised in this appeal; see footnote 7 of this opinion; is part of the dispositive issue before this court, that is, whether Cox Cable is the only party able to seek judicial review in this case. On the basis of the legislative intent expressed in 47 U.S.C. §§ 546 and 555, we conclude that General Statutes § 16-2a—the provision of state law that otherwise permits the office of consumer counsel to obtain judicial review—is inconsistent with the scheme set forth in the Cable Act and, therefore, is expressly preempted. See 47 U.S.C. § 556 (c).

We recognize that the office of consumer counsel is designated as "the advocate for consumer interests in all matters which may affect Connecticut consumers with respect to public service companies . . . ." General Statutes § 16-2a (a). Additionally, we appreciate that, whereas there is no statute giving the advisory council the authority to appeal a decision by the department, § 16-2a generally empowers the office of consumer counsel to appeal department decisions to the court. See footnote 3 of this opinion. Such state legisla-

(h) and 16-331 (c) (1). There is no statutory authority to enforce any of the advisory council's concerns.

tion cannot, however, control because, for the reasons we have already articulated, it conflicts with the clear federal legislative intent to restrict the right to seek review to the cable operator. *Barbieri* v. *United Technologies Corp.*, supra, 255 Conn. 717.

The judgment is affirmed.

In this opinion the other justices concurred.