[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR POSTJUDGMENT INTEREST AND COSTS
This decision is a sequel to the Supreme Court's decision in Cohen v. Yale-New Haven Hospital, 260 Conn. 747, 800 A.2d 499 (2002).
The plaintiff, Edward Cohen, brought this action against Yale-New Haven Hospital, Yale University School of Medicine and the defendant Barry M. Kacinski, an oncologist, in September 1994, concerning medical malpractice that took place between September 1992 and May 1993. The plaintiff withdrew the action against Yale-New Haven Hospital and Yale university school of Medicine. The case was tried to a jury against the defendant Kacinski in 2000. The jury, answering written interrogatories, rendered a verdict for the plaintiff in the amount of $2,000,000. Thereafter, the defendant moved to set aside the verdict, for a new trial, for judgment notwithstanding the verdict, and for a remittitur. The court granted in part the defendant's motion to set aside the verdict and found that the balance of the verdict was excessive. The court ordered a new trial on the issue of damages unless the plaintiff agreed to remit $1,050,000. The plaintiff accepted the remittitur, but nonetheless appealed to the Appellate Court. The defendant cross-appealed.
The Supreme Court dismissed the plaintiff's appeal and affirmed the trial court's judgment on the defendant's appeal. See Cohen v. Yale-NewHaven Hospital, supra, 260 Conn. 747. The plaintiff has now moved for an award of postjudgment interest, and the defendant objects.
Since this is a medical malpractice case, the plaintiffs entitlement to postjudgment interest is governed by General Statutes § 37-3b, which was amended in 1997, during the pendency of this action. The parties' dispute centers on which version of § 37-3b controls the plaintiffs motion. The plaintiff argues that the version of the statute extant at the time the plaintiffs cause of action arose in 1992 and 1993 controls his motion. The defendant contends that the plaintiffs motion is governed CT Page 1407 by the 1997 amendment to § 37-3b, which would toll postjudgment interest during the pendency of the plaintiff's appeal.[1]
 I
The first issue is whether the 1997 amendment to § 37-3b governs the plaintiffs motion for postjudgment interest.
Prior to 1997, General Statutes § 37-3b provided: "For a cause of action arising on or after October 1, 1981, interest at the rate of ten percent a year, and no more, may be recovered and allowed in any action to recover damages for injury to the person, or to real or personal property, caused by negligence, computed from the date of judgment."
In 1997, the General Assembly, in Public Act No. 97-58,[2] amended § 37-3b to provide:
"(a) For a cause of action arising on or after May 27, 1997, interest at the rate of ten percent a year, and no more, shall be recovered and allowed in any action to recover damages for injury to the person, or to real or personal property, caused by negligence, computed from the date that is twenty days after the date of judgment or the date that is ninety days after the date of verdict, whichever is earlier, upon the amount of the judgment.
"(b) If any plaintiff in such action files a postverdict or postjudgment motion or an appeal, the recovery of interest by such plaintiff shall be tolled and interest shall not be added to the judgment for the period that such postverdict or postjudgment motion or appeal is pending before the court. The provisions of this subsection shall not apply if the reason for the filing of a postverdict or postjudgment motion or appeal by the plaintiff is to reply to or answer a motion or appeal filed by a defendant."
Preliminarily, the court observes that the issue is not one of the retroactive application of a statute. Although "[a] statute should not be applied retroactively to pending actions unless the legislature clearly expressed an intent that it should be so applied"; McNally v. ZoningCommission, 225 Conn. 1, 9, 621 A.2d 279 (1993); see General Statutes §§ 1-1 (u), 55-3; the aspect of Public Act No. 97-58 § 2 implicated here, subsection (b), governs matters expressly occurring post-appeal. An action is generally not deemed "pending" while the case is on appeal. Salem Park, Inc. v. Salem, 149 Conn. 141, 144, 176 A.2d 571
(1961); see Schenck v. Pelkey, 176 Conn. 245, 251, 405 A.2d 665 (1978);Chomko v. Patmon, 20 Conn. App. 159, 161, 565 A.2d 250 (1989). Moreover, CT Page 1408 "a law is retroactive if it changes the legal consequences of acts completed before its effective date." (Emphasis in original; internal quotation marks omitted.) Johnson v. Commissioner of Correction,258 Conn. 804, 829 n. 27, 786 A.2d 1091 (2002). The effective date ofPublic Act No. 97-58 was May 27, 1997, and § 5 of that Public Act provided that § 2, which amended General Statutes § 37-3b, took effect from the date of the act's passage. The plaintiffs appeal in this case was not filed until October 2, 2000. Thus, § 2 ofPublic Act No. 97-58 did not change the legal consequences of acts completed before its effective date and, accordingly, does not act retroactively.
The issue is, rather, whether the legislature intended what is now subsection (b) of § 37-3b to apply to a cause of action arising prior to 1997. This question turns on whether the words "such action" in subparagraph (b) of General Statutes § 37-3b refer to the phrase "a cause of action arising on or after May 27, 1997" in subparagraph (a). This is a question of legislative intent.
"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case. . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Luce v. United Technologies Corp., 247 Conn. 126, 133,717 A.2d 747 (1998). In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended. Kron v. Thelen, 178 Conn. 189, 192, 423 A.2d 857 (1979); accordWillow Springs Condominium Assn., Inc. v. Seventh BRT Development Corp.,245 Conn. 1, 26, 717 A.2d 77 (1998)." (Internal quotation marks omitted.)Cox Cable Advisory Council v. Dept. of Public Utility Control,259 Conn. 56, 63, 788 A.2d 29 (2002).
"First we look to the words of the statute." Gill v. PetrazzuoliBros., Inc., 10 Conn. App. 22, 30, 521 A.2d 212 (1987). The critical words in subsection (b) of § 37-3b are "such action." "`The word "such" has been construed as a related adjective referring back to and identifying something previously spoken of and that it naturally, by grammatical usage, refers to the last precedent.'" Nichols v. Warren,209 Conn. 191, 197, 550 A.2d 309 (1988). The last precedent to "such action" in § 37-3b is "any action to recover damages for injury to the person, or to real or personal property caused by negligence" in subsection (a).[3] This is the phrase to which the words "such action" CT Page 1409 presumably refer. Winslow v. Lewis-Shepard, Inc., 216 Conn. 533, 538,582 A.2d 1174 (1990). Moreover, subsection (b) uses the words "such action" rather than such "cause of action." If the legislature had intended subsection (b) to apply to "a cause of action arising on or after May 27, 1997, "it would have more likely to have used the phrase "such cause of action" in subsection (b).
However, the phrase "any action to recover damages for injury to the person, or to real or personal property, caused by negligence" in subsection (a) is itself limited by the next precedent, "[f]or a cause of action arising on or after May 27, 1997." This suggests that, for purposes of postjudgment interest, a negligence action arising prior to May 27, 1997, is not governed by § 2 of Public Act No. 97-58.
In addition, § 5 of Public Act No. 97-58, § 2 of which amended § 37-3b, provides: "This act shall take effect from its passage, except that section 3 shall take effect October 1, 1997 and section 1 shall take effect January 1, 1998, and section 4 shall be applicable to any claim or cause of action pending on or brought after March 19, 1996." (Emphasis added.) Had the legislature intended that § 2(b) of the act apply to preexisting causes of action it could have clearly said so in § 5, as it did with respect to § 4 of the act.
Next, we look "to the legislative history and circumstances surrounding its enactment. . . ." Cox Cable Advisory Council v. Dept. of PublicUtility Control, supra, 259 Conn. 63. The court has examined the legislative history of Public Act § 97-58 and finds it unilluminating as to the issue before the court.
Finally, the court observes that if "such action" is construed to mean "cause of action arising on or after May 27, 1997, "then the statute would not apply for years, i.e., until those causes of action are put into suit, which itself can be two to three years; General Statutes §§ 52-584, 52-577, 52-577a, 52-577b, 52-577c, 52-577d, 52-584a; and then tried to conclusion — which could be several years later. "We are bound to assume that the legislature intended, in enacting a particular law, to achieve its purpose in a manner which is both effective and constitutional." Moscone v. Manson, 185 Conn. 124, 128, 440 A.2d 848
(1981). "In addition, we presume that the legislature intends sensible results from the statutes it enacts. . . . Therefore, we read each statute in a manner that will not thwart its intended purpose or lead to absurd results." (Internal quotation marks omitted.) Garcia v. ITTHartford Ins. Co., 72 Conn. App. 588, 592, 805 A.2d 779 (2002).
"Axioms such as this, however, cannot displace the need for careful and CT Page 1410 thoughtful interpretation of [the statutory provisions at issue], nor can they displace the firm conclusions that such a process of interpretation yields. [Such] axioms, like all rules or canons of statutory construction, serve as important guidelines to the determination of legislative meaning. To permit them to displace the conclusions that careful interpretation yields, however, would be a disservice to the legislative process, as well as to the judicial exercise of interpreting legislative language based upon the premise that the legislature intends to enact reasonable public policies.ZZ (Internal quotation marks omitted.) Carriero v. Naugatuck, 243 Conn. 747, 762, 707 A.2d 706
(1998).
If only for reasons of convenience in implementation, the legislature has chosen to deal with the matter of postjudgment interest in negligence actions in such a way that the legislation does not become operative until years after its passage. This is precisely the manner in which the legislature dealt with the matter of interest generally in § 37-3b
when the statute was originally enacted in 1981, and again when it was amended in 1997. The legislature could well have determined that to tie the tolling provisions of § 37-3b (b) to a different effective date than the general interest provisions of the statute would be inconvement.
The court concludes that the words "such action" in subsection (b) of § 37-3b is referable to and, therefore, limited by the phrase "a cause of action arising on or after May 27, 1997, "in subsection (a). Since the plaintiffs cause of action arose prior to that date, the matter of postjudgment interest is governed by § 37-3b as it existed prior to the enactment of Public Act No. 97-58.
 II
The next question is whether the plaintiff should be awarded interest under General Statutes § 37-3b as it existed before the 1997 amendment.
Interpreting § 37-3b, as it stood before the 1997 amendment, the Appellate Court has stated that "[a] decision to deny or grant postjudgment interest is primarily an equitable determination and a matter lying within the discretion of the trial court. . . . The court's determination regarding the award of interest should be made in view of the demands of justice rather than through the application of any arbitrary rule. . . . Whether interest may be awarded depends on whether the money involved is payable . . . and whether the detention of the money is or is not wrongful under the circumstances." (Citations CT Page 1411 omitted; internal quotation marks omitted.) Bower v. D'Onfro,45 Conn. App. 543, 550-51, 696 A.2d 1285 (1997).
The defendant argues that the 1997 amendment to § 37-3b, under which interest is tolled for the period during which a plaintiff takes an appeal, eexpresses a legislative consensus as to how a court should exercise its discretion under the statute as it existed before the amendment, which this court should follow by sustaining its objection to the plaintiffs motion for postjudgment interest. The court disagrees. The 1997 act removes any discretion from the court in awarding postjudgment interest where the plaintiff takes an appeal, creating a bright-line rule of prohibition. "We presume that, in enacting a statute, the legislature intended a change in existing law." Connecticut National Bank v.Giacomi, 242 Conn. 17, 39, 699 A.2d 101 (1997). That presumed intent is not rebutted by the legislative history of Public Act No. 97-58.
Since there is an absence of appellate case law in Connecticut on whether a judgment creditor who appeals the judgment is entitled to postjudgment interest,[4] it is appropriate to look to how other jurisdictions have resolved the issue. Muniz v. Kravis, 59 Conn. App. 704,714, 757 A.2d 1207 (2000); Gaudio v. Gaudio, 23 Conn. App. 287, 293,580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990);Henderson v. Dept. of Motor Vehicles, 4 Conn. App. 143, 146, 493 A.2d 242
(1985), affd, 202 Conn. 453, 521 A.2d 1040 (1987).
"At common law judgments do not bear interest but interest on judgments is now generally allowed by virtue of statute." Little v. United NationalInvestors Corp., 160 Conn. 534, 536, 280 A.2d 890 (1971). In the absence of a statute specifically addressing the effect of a judgment creditor's appeal on the creditor's entitlement to postjudgment interest, "[t]here is . . . a split of authority among the various jurisdictions as to a judgment creditor's right to interest when the judgment creditor is the appealing party. . . ." Phillips. v. Mills, 14 Md. App. 272, 286 A.2d 798,800 (1972); see annot., "Right to Interest Pending Appeal, of Judgment Creditor Appealing Unsuccessfully on Ground of madequacy," 15 A.L.R.3d 411 (1967). Numerous cases in recent years, however, have held that the fact that the plaintiff appealed a judgment in his favor should not be the controlling factor in determining whether the plaintiff should be awarded postjudgment interest for the period during which the case is on appeal. Braun v. Pikus, 108 Ohio App.3d 29, 669 N.E.2d 880, 882 (1995), appeal not allowed, 75 Ohio St.3d 1511, 665 N.E.2d 681 (1996); see Dalev. Dale, 341 S.C. 516, 534 S.E.2d 705 (S.C.Ct.App. 2000); Ramos Rosav. Telemundo CATV, Inc., 966 F. Sup. 137, 139-40 (D.P.R. 1997); GreatSouthern Midway, Inc. v. Hughes, 223 Ga. App. 643, 478 S.E.2d 400
(1996); Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc.,
CT Page 141250 Cal.App.4th 1542, 58 Cal.Rptr.2d 371 (1996); Viock v. Stowe-WoodwardCo., 59 Ohio App.3d 3, 569 N.E.2d 1070, 1072-73 (1989); In re Marriage ofPassiales, 144 Ill. App.3d 629, 494 N.E.2d 541, 548, 98 Ill. Dec. 419
(1986); Westinghouse Electric Corp. v. Board of Assessment Appeals,72 Pa. Commw. 199, 456 A.2d 694, 698-99 (1983); Phillips v. Mills,14 Md. App. 272, 286 A.2d 798, 800-01 (1972), and cases cited therein;Giant Food, Inc. v. Jack I. Bender Sons, 399 A.2d 1293, 1305 (D.C. 1979); Stager v. Florida East Coast Railway Co., 189 So.2d 192, 193-94
(Fla.Dist.Ct.App. 1966); Hoover v. Dotson, 202 Pa. Super. 532,198 A.2d 603 (1964). "Absent waiver or conduct estopping the creditor from claiming interest pending appeal, the creditor should not be penalized for seeking to increase the award in his favor, particularly where the debtor also appeals." Giant Food, Inc. v. Jack I. Bender Sons, supra, 399 A.2d 1305.
Here, although the plaintiff was the party who appealed the judgment, he presented substantial substantive issues on appeal. The appeal was taken in good faith and not for any improper purpose. See Hoover v.Dotson, supra, 202 Pa. Super. 532; cf. Rules of Professional Conduct 3.1 (a lawyer may bring a proceeding "which includes a good faith argument for an extension [or] modification . . . of existing law"). The defendant cross-appealed. Significantly, the defendant had the use of the money during the pendency of the appeal. See Braun v. Pikus, supra, 669 N.E.2d 882. Nothing prevented the defendant from paying the plaintiff the amount of the judgment at the time the judgment was rendered or any time thereafter. See, e.g., Ramos Rosa v. Telemundo CATA, Inc., supra,966 F. Sup. 140.
Finally, "[e]quity depends essentially upon the particular circumstances of each individual case. . . . Story's EquityJurisprudence Vol. I, Ch. 1; Chitty's Blackstone, Bk. I, Sec. 1." (Internal quotation marks omitted.) Natural Harmony, Inc. v. Normand,211 Conn. 145, 150, 558 A.2d 231 (1989). The plaintiff is a single, middle-aged man whose body and life during the past ten years have been ravaged by repeated, life-threatening and disfiguring assaults of cancer. Given the plaintiffs circumstances, it was not unreasonable for him to seek to retain what he had won in the trial court and yet augment that victory on appeal. That he could not do so, by accepting the court's remittitur while still appealing the judgment, was a holding by the Supreme Court of first impression, albeit not an unforeseen one.
For the foregoing reasons, the court awards the plaintiff postjudgment interest, including interest for the time the plaintiffs appeal was pending. CT Page 1413
 III
The plaintiff has filed a bill of costs to which the defendant objects.
The defendant first argues that the plaintiff is barred from recovering costs based on General Statutes § 52-243, which provides: "If a verdict is found on any issue joined in an action in favor of the plaintiff, costs shall be allowed to him, though on some other issue the defendant should be entitled to judgment, unless the court which tried the issue is of the opinion that the defendant had probable cause to plead the matter found against him." "It would appear that the matter of costs under this section is discretionary with the trial referee." Sperryv. Moler, 3 Conn. App. 692, 695, 491 A.2d 1115 (1985). The defendant states that he "had probable cause to defend the matter." He argues that he prevailed on the "guts" of the plaintiffs case,[5] and that the plaintiff was only "nominally the `victor.'"
The court disagrees. This was a single count medical malpractice claim. The plaintiff prevailed on liability and, although the jury's $2,000,000 verdict was set aside, he recovered a judgment in the amount of $375,000. Even in this day of celestial verdicts, this is not normally considered a nominal sum. These facts distinguish this case from Pesteyv. Cushman, Superior Court, complex litigation docket at Tolland, Docket No. X07 CV 94 70091 (May 4, 2000, Bishop, J), in which the plaintiff prevailed on only one of two counts submitted to the jury and achieved what the court characterized, without mentioning the specific amount of the verdict, a mixed result." The general rule of § 52-243 is that "if a verdict is found on any issue . . . in favor of the plaintiff, costs shall be allowed to him. . . ." Here, that general rule should prevail.[6]
The defendant also objects to specific items of the plaintiffs bill of costs. These objections are governed by Practice Book § 18-12(a), which provides: "Whenever in any action there shall be two or more issues joined on material allegations, and a part of such issues shall be found for the defendant and the remainder for the plaintiff; the defendant shall recover such costs as were incurred upon the issues found in defendant's favor, including fees of witnesses and the expense of summoning them. If several distinct claims shall be made under one count, and the plaintiff shall recover upon some and not upon others, plaintiff shall not recover costs incurred in attempting to support the claims which plaintiff shall fail to establish."
As the defendant observes, over 90% of these costs are ascribed to three experts. The parties agree that the defendant's objection to costs CT Page 1414 ascribed to Dr. Vogel's testimony is well taken.
The defendant also objects to the taxing of costs for the testimony of Dr. Singer because the court found that Singer's testimony was insufficient to support the plaintiffs principal claim of damages, that the defendant's negligence caused a recurrence of the plaintiffs sarcoma. Nonetheless, Singer was the plaintiffs treating physician from 1993 to at least 1997, and his testimony was crucial to the claim of damages on which the plaintiff did prevail. Indeed, it would have been difficult for the plaintiff to have successfully presented the aspect of the case on which he prevailed without the testimony of his treating physician.
The defendant objects to the taxing of costs for the testimony of Dr. Mendel. The defendant contends that Mendel "testified solely to provide the jury with background information regarding the reading of the films in the case — he provided no testimony on standard of care . . . and he expressed no opinion on whether the differences in the lesions seen on the various films made any differences in plaintiffs treatment or outcome, and no opinion on whether plaintiff suffered any damages because of the changes seen among the various films." The applicable statute, General Statutes § 52-260 (f), however, does not require that an expert witness summoned to testify in a medical malpractice case provide any particular testimony so long as he gives "expert testimony" in the action or proceeding.[7] Mendel testified as to radiological films of the plaintiffs leg and provided valuable expert testimony to the plaintiffs case. Moreover, he was the radiologist most familiar with those films. Costs are allowed for his appearance and testimony.
Finally, the defendant objects to the taxing of costs in the amount of $260.81 for enlarged photographs admitted into evidence at trial showing the disfigurement the plaintiff sustained to his leg as a result of the recurrences of sarcoma in 1995 and 1997. The court ultimately determined that the plaintiff failed to prove that the defendant's negligence caused his cancer to recur in 1995 and 1997. The court, therefore, disallows costs for the photographs.
Postjudgment interest at the agreed-upon rate of 4.5%[8] from the date of the judgment to the date of payment of the judgment is awarded the plaintiff. Costs are taxed in the amount of $9,814.00.
BY THE COURT
___________________ Bruce L. Levin CT Page 1415 Judge of the Superior Court